**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Arnold F. HABIG and Jerome M. Schroering, Defendants-Appellees.**

**No. 71–1654.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1972.

Decided Jan. 24, 1973.

Certiorari Denied May 7, 1973.
See 93 S.Ct. 2145.

Stanley B. Miller, U. S. Atty., Indianapolis, Ind., Fred B. Ugast, Tax Division, John P. Burke, Atty., U. S. Department of Justice, Washington, D. C., for plaintiff-appellant.

Fred P. Bamberger, Evansville, Ind.; John W. Houghton, Indianapolis, Ind., for defendants-appellees.

Before SWYGERT, Chief Judge, and KILEY and FAIRCHILD, Circuit Judges.

SWYGERT, Chief Judge.

This appeal is from an order by the district court suppressing the use of certain evidence in a criminal tax evasion prosecution. The evidence was obtained by Government agents during the preindictment investigation. Entered pursuant to a motion under Fed.R.Crim.P. 41(e), the order followed an evidentiary hearing and was based on findings of fact and conclusions of law made by the district judge. The hearing was conducted in conformity with the remand ordered by this court in an earlier appeal. United States v. Habig, 413. F.2d 1108 (7th Cir., 1969).

The issues in this appeal differ materially from those presented when the case was before us initially. The Government now contends that the decision in United States v. Dickerson, 413 F.2d 1111 (7th Cir., 1969), does not control the disposition of the issues here despite its earlier concession to the contrary. This shift of position requires that we

first decide a corollary issue: whether the "law of the case" doctrine precludes our resolution of the main issue. A separate question relates to whether any fourth amendment violations occurred during the Government's investigation which would require suppression of the questioned evidence. It was not necessary for us to reach this last issue in the earlier appeal because we were of the view that an application of the *Dickerson* rule was sufficient to resolve the question.

Briefly, the relevant facts developed at the hearing are as follows. On February 15, 1963 Charles E. Lawrence, an agent of the Internal Revenue Service, was assigned the routine civil audit of a consolidated income tax return filed by the Jasper Corporation for the year ending June 30, 1961. The consolidated return covered eleven corporations, ten of them subsidiaries of the Jasper company.[1] The agent was also assigned the civil audit of the separate tax returns of three of the subsidiary companies for the year ending June 30, 1960. During its progress, the audit was expanded to include other fiscal years.

On the recommendation of a firm of independent certified public accountants which had prepared the returns, Seidman & Seidman, the agent in February 1963 visited Jerome M. Schroering, the comptroller of the Jasper company and each of its subsidiaries. After identifying himself and stating his assignment, Lawrence secured Schroering's cooperation for an examination of the records of Jasper and its subsidiaries at their respective offices.

Lawrence spent from March to July of 1963 examining the records of Jasper and four subsidiary companies. As a result of his examination, Lawrence discovered certain discrepancies which led to his belief that a tax fraud had been perpetrated through records of fictitious intercompany sales of lumber. Lawrence thereupon submitted a referral report "for potential fraud cases" to his group supervisor, and at the end of March, 1964 the case was accepted by the Intelligence Division of the Internal Revenue Service for a full-scale investigation. Special Agent Russell C. Hicks was assigned to conduct the investigation with the aid of agent Lawrence. The district judge found that the investigation "from its inception was upon Arnold F. Habig and Jerome M. Schroering." Habig was the largest single stockholder of the corporations and their chief executive officer. After Hicks' assignment, Lawrence at Hicks' direction obtained and examined numerous corporate records. On September 21, 1964 Hicks and Lawrence met by appointment with Schroering at the Jasper corporation offices. Hicks, upon being introduced to Schroering, stated: "I am a Special Agent with the Intelligence Division; Mr. Kelly [of Seidman] knows what my job is. I am here to determine if there is [sic] any criminal aspects involved in the case." Hicks then requested and received permission from Schroering to examine additional books and records of the corporations, which the agents subsequently spent considerable time examining. They also copied some of the documents being examined.

The investigation continued into 1965, when Hicks requested that Schroering provide him with additional documents. Schroering complied, and had the assembled records delivered to the offices of the Evansville company where Hicks and Lawrence examined them. During September 1965 the two agents met with Schroering and Habig in the offices of the Intelligence Division of the IRS. At the meeting, which was Habig's first personal contact with either of the agents, both Habig and Schroering were

---

1. The ten subsidiaries were: The Borden Cabinet Company; Evansville Veneer & Lumber Company; Cabinet Manufacturing Corporation; Jasper American Manufacturing Company; Jasper Style Masters, Inc.; S. S. & S. Manufacturing Company; Lafayette Manufacturing Company; W. W. Kimball Company; Kimball Piano, Inc.; and Habig Manufacturing, Inc.

interrogated regarding the affairs under investigation. The district court found that no warnings of constitutional rights were given nor was either defendant advised that he was the subject of a criminal investigation. Subsequently, between November 1965 and February 1966, the agents copied numerous documents and records of the corporations. The district court found that this copying was undertaken in a secretive manner and without the consent of either Schroering or Habig. In August an indictment was returned against these two defendants.

The district judge found that the agents had acted improperly in their conduct of the investigation after January, 1964:

> The plaintiff's agents after February 11, 1964 had the duty upon the first contact with defendants to advise them of their constitutional rights and advise them that they were the subject of a criminal investigation. The statements, information and leads to evidence obtained by the plaintiff's agents from the defendants after February 11, 1964 were illegally obtained by reason of the failure of the plaintiff's agents to fulfill such duty as the criminal investigation was focused on the two (2) defendants from and after February 11, 1964.

Moreover, the district judge inferred "that the corporations and the defendants would not have consented to the criminal investigation had they known of the deceit practiced by plaintiff's agents prior to September 21, 1964," in failing to warn the defendants of the changed nature of the ongoing investigation.

## I

■ The "law of the case" doctrine comes typically to bear when an appellate court has before it for a second time a controversy in which it has previously made a ruling of law. Strictly applied, the doctrine serves to bar an attack on the prior ruling by either party to the suit, much like the doctrine of res judicata. This court, however, has not adhered to a rigid application of the doctrine. Many years ago, Judge Evans wrote:

> [T]he view that appeals to us, and which we adopt, merely recognizes the law of the case as one of public policy and private peace, and one to be followed generally, and departed from rarely. It is, however, not an inexorable rule, and should not be applied where the law as announced is clearly erroneous, and establishes a practice which is contrary to the best interests of society, and works a manifest injustice in the particular case. Luminous Unit Co. v. Freeman-Sweet Co., 3 F.2d 577, 580 (7th Cir., 1924).

See also Kaku Nagano v. Brownell, 212 F.2d 262 (7th Cir., 1954); Bowles v. Good Luck Glove Co., 150 F.2d 853 (7th Cir.), cert. denied, 326 U.S. 794, 66 S.Ct. 484, 90 L.Ed. 483 (1945); LeBold v. Inland Steel Co., 136 F.2d 876 (7th Cir.), cert. denied, 320 U.S. 787, 64 S.Ct. 196, 88 L.Ed. 473 (1943). This view is peculiarly appropriate here. The Government in the first appeal conceded that the rule we would fashion in *Dickerson* should apply to the instant prosecution. The concession was improvident and led us to imply that the rule announced in *Dickerson* controlled this case. As we shall demonstrate, that implication was erroneous.

## II

■ In *Dickerson* we held that "*Miranda* warnings must be given to the taxpayer by either the revenue agent or the special agent at the inception of the first contact with the taxpayer after the case has been transferred to the Intelligence Division." 413 F.2d at 1116–1117. The question before us here is whether the rule announced in *Dickerson* applies to corporate records and leads obtained by internal revenue agents for use as evi-

dence in a criminal prosecution.[2] We hold that it does not.

 It is well established that a corporate officer or other custodian of corporate books has no constitutional right to refuse production of corporate records in response to a lawful request therefor even though the records may incriminate him personally. Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911). A corporation must submit its books and records whenever properly required to do so, and, since the privilege against self-incrimination is a purely personal one, it cannot be utilized on behalf of a corporation. United States v. White, 322 U.S. 694, 699, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944). It necessarily follows that a corporate officer, even though he is a prospective criminal defendant, is not entitled to Miranda [3] warnings when requested to produce corporate records. In such a situation Dickerson does not apply.

In support of their position, the defendants rely on Curcio v. United States, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d (1957). That case held that a custodian of a union's books cannot be compelled by contempt order to reveal the whereabouts of the books after he had testified that his refusal to produce the books was based on the fact that he did not then possess them. The case is inapposite here. No claim is made that either Habig or Schroering ever asserted that the corporate records requested by the agents were not possessed by them and that the deception found by the trial court to have been practiced served subsequently to induce their unknowing revelation of the location of absent records. Indeed, the fact that all the records requested by the agents were produced leaves the defendants no room to argue that the situation here falls within the ambit of Curcio.

## III

 The defendants contend that the fourth amendment rights of their corporations were violated because they, as corporate officers, were not given Miranda-type warnings required under the fourth amendment to assure a knowing and intelligent consent to search. We reject this contention. This court only recently held that warnings required by the fifth and sixth amendments under Miranda are not sine qua non to a valid waiver of fourth amendment rights. United States v. Young, 471 F.2d 109 (7 Cir. 1972). In that case the defendant had invited police officers into his home and invited them to "look around." They found and seized incriminating evidence in the personal possession of the defendant. We held that the fourth amendment required no Miranda-type warnings in advance of the search in that situation; a fortiori, no such warnings need be given to custodians of corporate records during a criminal tax investigation.

## IV

The district judge held that "deceit" had been practiced by agents Lawrence and Hicks prior to September 21, 1964; on that date Hicks informed Schroering that he was a Special Agent of the Intelligence Division and that a criminal investigation was underway. The deceit referred to by the judge encompassed the period from March 27, 1964, when the Intelligence Division started a full-scale criminal investigation, to the September 21 meeting. The judge found that neither defendant was aware during that period that a criminal investigation was then in progress or that Hicks had been assigned as a Special Agent to conduct the investigation. He further found that the true nature of the investigation was actively concealed from the defendants and all others con-

---

2. The Government concedes that Dickerson serves to bar the admission into evidence of all oral statements made by Schroering and Habig after Hicks came into the case. We do not, therefore, modify that portion of the district court order suppressing oral statements.

3. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

nected with Jasper and its subsidiaries: "Mr. Hicks . . . remained submerged from the view of the taxpayers and secretly conducted the search for evidence of crime through the facade of Mr. Lawrence who was accepted and known to everyone as the civil agent of the Internal Revenue Service." Finally, the judge found that the corporate records assembled by Schroering for the agents' inspection in a private room of the Evansville Veneer & Lumber Company offices were photocopied by the agents "behind closed doors without the permission or authorization or knowledge of anyone, including the defendants." The last finding has no relevance to the issue before us. The undisputed fact is that these records were assembled and made available to the agents at the direction of Schroering for the acknowledged purpose of inspection. Whether they merely looked at the records or copied them, even clandestinely, is beside the point.

■ It is not to be gainsaid, nonetheless, that corporations do have rights under the fourth amendment that may be asserted under certain circumstances. In a Clayton Act civil prosecution, this court held in Knoll Associates v. FTC, 397 F.2d 530 (7th Cir., 1968), that the theft of corporate documents which were turned over to the Government for its use constituted an unreasonable search and seizure within the meaning of the fourth amendment and that the corporate defendant was entitled to invoke this constitutional protection. Similarly, corporate officers may have fourth amendment rights with respect to corporate records. In Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1957), a union officer was protected from a warrantless search of a union office (jointly shared by the officer) from which union records were seized. Also see United States v. Rosenberg, 416 F.2d 680 (7th Cir., 1969).

■ In the case before us there was no theft of corporate records nor any other form of trespass on corporate property. The fact that a criminal investigation had been started was concealed from the defendants for a period of time did not make involuntary the otherwise voluntary consent of Schroering to inspection of the corporate records. Schroering was aware of Lawrence's identity as an Internal Revenue agent, and Schroering had no constitutional privilege to refuse the production of corporate records when Lawrence so requested, provided the records requested were relevant to tax matters under investigation. It was his duty to make the records available regardless of whether the investigation had shifted from a civil to a criminal emphasis or whether he might himself be incriminated. Wilson v. United States, *supra;* see Curcio v. United States, *supra*; United States v. Sclafani, 265 F.2d 408, 415 (2d Cir.), cert. denied, 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534 (1959). The same is true with respect to Habig. It is irrelevant that no summons, subpoena, or search warrant was used. If production of the records had been refused, the agents could have obtained them by summons under 26 U.S.C. §§ 7602, 7604. The fact that the agents did not resort to this measure does not mitigate against the consensual production of the records. Greene v. United States, 296 F.2d 841, 843 (2d Cir., 1961).

The order of suppression is vacated insofar as that order covered the corporate records of Jasper and its subsidiaries and any leads which the Government agents obtained from those records during their investigation. In all other respects the order is affirmed, and the case is remanded for trial.