APPLETON ELECTRIC COMPANY, Plaintiff–Appellee,

v.

GRAVES TRUCK LINE, INC., Defendant–Appellant.

No. 79–1640.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 1980.

Decided Nov. 25, 1980.

As Corrected Dec. 2, 1980.

Martha A. Mills, Chicago, Ill., for defendant–appellant.

Jay A. Canel, Rudnick & Wolfe, Chicago, Ill., for plaintiff–appellee.

Before PELL, Circuit Judge, PECK,* Senior Circuit Judge, and TONE,** Circuit Judge.

---

* Honorable John W. Peck, Senior Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation.

JOHN W. PECK, Senior Circuit Judge.

This appeal considers whether 282 default judgments taken against appellant in a class action suit are void due to lack of subject matter jurisdiction or because the damages awarded exceeded the amount prayed for in plaintiff's demand for relief. And, if the first two issues are answered in the negative, whether the trial court abused its discretion in not setting aside a number of the default judgments that appellant contends come within the purview of Rule 60(b)5, Fed.R.Civ.P.

**I**

This case arises out of overcharges made pursuant to a tariff filed with the Interstate Commerce Commission to which appellant Graves Truck Line, Inc., (Graves), a motor common carrier, was a party. This action has a long and complicated history, the early part of which is chronicled in detail in *Appleton Electric Co. v. Advance–United Expressways*, 494 F.2d 126 (7th Cir. 1974), a previous decision in this case. We borrow as much of the description set forth there as will facilitate a basic understanding of the background of this dispute:

> The Middlewest Motor Freight Bureau, Inc., filed and published proposed rate increases on behalf of its motor carrier members to take effect on April 1, 1968. The Interstate Commerce Commission permitted the rates to go into effect as scheduled but, because of protests by various parties, instituted an investigation of the lawfulness of the increased rates without suspending them. By order of April 3, 1968, the Commission ordered specific information and data to be filed, prescribed special procedures and set the matter for hearing on May 20.

494 F.2d at 128.

In response to the carriers' request, the Commission postponed the hearing date, but did so conditioned upon the carriers' agreement to refund any portion of the rate

---

** Honorable Philip W. Tone resigned April 30, 1980, and did not participate in this decision.

increase subsequently disapproved. Following the postponed hearing, the Commission found that the increases were not just and reasonable, and ordered the carriers to refund the excess charges. The Commission later amended the order to require refunds to be made upon presentation of shippers' claims supported by paid freight bills or other appropriate evidence.

The carriers sought judicial review of the Commission's order of June 5, 1969, as modified by its order of August 29, 1969, by filing a complaint on January 26, 1970, in the United States District Court for the District of Colorado, seeking a declaration that the orders were invalid and an injunction against enforcement of the refund obligation by a three–judge court in accordance with 28 U.S.C. § 2325. On June 19, 1970, the district court granted a motion for a temporary restraining order. (Footnotes omitted.)

*Id.* at 129.

The three–judge court dismissed the complaint and entered judgment against the carriers, thereby upholding the Commission's order. *Admiral Merchants Motor Freight, Inc. v. United States*, 321 F.Supp. 353 (D.Colo.1971). The Supreme Court of the United States affirmed the judgment on appeal without opinion at 404 U.S. 802, 92 S.Ct. 51, 30 L.Ed.2d 37, *rehearing denied*, 404 U.S. 987, 92 S.Ct. 443, 30 L.Ed.2d 371 (1971).

This complaint was filed on June 15, 1970 by Appleton Electric Company and on behalf of all other persons similarly situated who shipped goods from May 20, 1968 through August 29, 1969 covered by the rates involved in Interstate Commerce Commission Docket No. 34971. Originally the complaint was directed against seventeen named motor carrier defendants, but the named plaintiff moved to amend the complaint on its face in order to add to the list of defendants the words "individually and on behalf of all others similarly situated." At the same time, plaintiff moved for a determination that the action be maintained as a class action.

494 F.2d at 131.

The district judge found that the action was properly maintainable as a class action and defined both the plaintiff class and the defendant class on February 25, 1972.

Although the complaint originally relied for jurisdiction on 49 U.S.C. § 304a (reparation proceedings), the plaintiffs on June 20, 1972 moved for summary judgment on the basis of 49 U.S.C. §§ 16(2) and 305(g) (enforcement of Commission order for payment of money). On November 21, 1972, the court issued its memorandum, and on December 7, 1972, its order, granting summary judgment for the plaintiffs on the issue of liability and continuing the case on the issue of damages only.[1]

On December 20, 1972, the court appointed independent counsel to represent the defendant class other than the seventeen named defendants. On January 18, 1973, the court appointed the two attorneys previously representing the named plaintiff and another attorney to represent the plaintiff class.

On April 17 and 18, 1973, the court held an evidentiary hearing to determine reasonable methods of ascertaining and notifying class members. On June 18, 1973, the court ordered that notice be sent to members of the plaintiff class by first–class mail and to members of the defendant class by certified mail. . . .

*Id.* at 132.

We granted defendants' petition for leave to appeal from the June 18 order pursuant

---

1. Prior to our disposition in *Appleton*, we affirmed summary judgment for shippers in eleven cases consolidated in this court on the ground that the judgment in *Admiral–Merchants Motor Freight, Inc. v. United States*, 321 F.Supp. 353 (D.Colo.) *aff'd*, 404 U.S. 802, 92 S.Ct. 51, 30 L.Ed.2d 37 (1971), was effective under the doctrines of res judicata and stare decisis as to carriers not parties thereto. *Aluminum Co. of America v. Admiral Merchants Motor Freight, Inc.*, 486 F.2d 717 (7th Cir.), *cert. denied*, 414 U.S. 1113, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973). Thus, the issue of liability has never been contested on appeal in the case at bar.

to 28 U.S.C. § 1292(b). We affirmed the district court's judgment order, holding that the district judge had not abused his discretion in certifying this suit as a class action suit, and that the notice contemplated by the June 18 order satisfied due process requirements. *Appleton Electric Co., supra,* at 139–40.

Appellant Graves received formal notice of its inclusion in the defendant class in August, 1973. The notice provided that any member of the defendant class could request exclusion from the class pursuant to the provisions of Rule 23(c)(2), Fed.R.Civ.P. Graves opted out of the class on October 23, 1973. On June 21, 1974, eight months after it opted out, appellant was served with a summons and complaint.

Graves did not answer the complaint and did not otherwise appear. On or about August 14, 1975, Graves was served with a motion for a "default order" together with a proposed order. The proposed order provided that shippers should file refund claims with counsel for plaintiff, and authorized the clerk of the district court to enter a default judgment in the amount claimed, together with interest and attorneys' fees equal to 33⅓% of the claim, upon application by the plaintiff–representative.

Again Graves failed to respond, and, on September 25, 1975, the district court entered the proposed order. On November 5, 1975, the first default judgment was entered against Graves. The district court refused to vacate the judgment, but stayed its enforcement pending final determination of all matters in the case.

The court subsequently certified, pursuant to 28 U.S.C. § 1292(b), that the procedure by which the September 25 default order was entered involved a controlling question of law, thus permitting immediate appeal from that order to this Court. We granted leave to appeal, and on April 17, 1978, this Court rendered its decision from the bench, affirming the district court's order.[2] Speaking from the bench, we said that Graves's jurisdictional defense should

have been raised affirmatively at the pleading stage, and had, therefore, been waived. We further stated that the rules governing the entry of default judgments are satisfied where the district court utilizes a formula by which it can compute the exact amount of damages. In addition, we observed that Graves had notice of the formula to be used in computing damages, and that, with regard to the single judgment before us at that time, Graves conceded that it was accurate.

Thereafter, 282 default judgments were entered against Graves. After all judgments became final, appellant moved for relief from the judgments; this motion was denied by the district court. Graves appeals to this Court, again raising the issues disposed of on its last appeal. Additionally, Graves argues that at least 100 of the judgments are voidable for various reasons under Rule 60(b)(5), Fed.R.Civ.P.

## II

The first question to be addressed is what effect we must give to our disposition on the prior appeal of issues that appellant urges us to reconsider here. We have long held that "matters decided on appeal become the law of the case to be followed ... on second appeal, in the appellate court, unless there is plain error of law in the original decision." *Kaku Nagano v. Brownell,* 212 F.2d 262, 263 (7th Cir. 1954). The "law of the case" rule is not a limitation on this Court's power to reconsider its prior rulings in a case, but is:

> based on the salutary and sound public policy that litigation should come to an end. It is predicated on the premise that "there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions or speculate of chances from changes in its members," and that it would be impossible for an appellate court "to perform its duties satisfactorily and efficiently" and expedi-

---

**2.** An order affirming the district court for the reasons stated from the bench was issued the following day. *Appleton Electric Co. v. Graves Truck Line, Inc.,* 577 F.2d 746 (7th Cir. 1978).

tiously "if a question, once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal" thereof. *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967), *quoting Roberts v. Cooper*, 20 How., 61 U.S. 467, 481, 15 L.Ed. 969 (1858). Because "law of the case" is not an immutable rule, we have, on a limited number of occasions reconsidered a previous adjudication where we concluded that our former ruling was clearly erroneous. *See, e. g., United States v. Habig*, 474 F.2d 57 (7th Cir. 1973), and *Luminous Unit Co. v. Freeman–Sweet Co.*, 3 F.2d 577 (7th Cir. 1924).

■ We believe that our prior adjudication disposed of important issues of law that had not been considered by this Court in the past. We therefore reconsider those issues here to correct any uncertainty that may have resulted from our previous ruling.[3]

### III

■ Plaintiff brought this action pursuant to 49 U.S.C. §§ 16(2) and 305(g). Section 16(3) of the same title lays down certain rules as to limitations of action. Both this Court and the Supreme Court have construed these limitations as jurisdictional, holding that the lapse of time not only bars the remedy but also destroys the liability. *See Midstate Horticultural Co. v. Pennsylvania R.R.*, 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96 (1943), and *Wisconsin Bridge & Iron Co. v. Illinois Terminal Co.*, 88 F.2d 459 (7th Cir. 1937).

■ It is fundamental that the federal courts are courts of limited jurisdiction, and that a lack of jurisdiction cannot be waived by the parties. Insofar as our pronouncement from the bench implied that Graves had waived its jurisdictional defense by failing to raise it in a timely fashion, we now perceive that we were in error. This does not, however, dispose of the matter. We believe that the statute of limitations

was tolled by the filing of the original complaint, and did not begin to run again until appellant opted out of the defendant class. Since Graves was subsequently served within the period provided in 49 U.S.C. § 16(3)(f), this Court was correct in the previous appeal in concluding that Graves's jurisdictional defense was without merit.

This suit was commenced by the filing of a class action complaint on June 15, 1970. In a related case, we held that the limitations period did not begin to run against any shippers until December 21, 1971. *Container Corp. of America v. Admiral Merchants Motor Freight, Inc.*, 489 F.2d 825 (7th Cir. 1973). Graves received its first formal notice of this suit in August, 1973, eight months after the one–year limit would have run, barring any application of the tolling doctrine.

Appellant contends that the statute was not tolled until it received formal notice of the suit. Those circuits that have considered the question whether notice is necessary to invoke the tolling doctrine have uniformly held that the filing of a complaint, in literal compliance with Rule 3, Fed.R.Civ.P., is sufficient to interrupt the running of a federal statute of limitations. Neither service of the complaint nor the summons on a defendant is necessary. In *United States v. Wahl*, 583 F.2d 285 (6th Cir. 1978), for example, the Court of Appeals for the Sixth Circuit held that the filing of a complaint within the limitations period tolled the statute even though the defendant was not served until three years after the statute of limitations had run. *See also Windbrooke Development Corp. v. Environmental Enterprises, Inc. of Florida*, 524 F.2d 461 (5th Cir. 1975); *Isaacks v. Jeffers*, 144 F.2d 26 (10th Cir.), *cert. denied*, 323 U.S. 781, 65 S.Ct. 270, 89 L.Ed. 624 (1944); and *Reynolds v. Needle*, 132 F.2d 161 (D.C.Cir.1942).

In each of the cases cited above, the defendant was named in the complaint. In

---

**3.** Even though the prior decision of this court of April 18, 1978, was an unpublished order, because we have reconsidered the issues there presented, we have, pursuant to Circuit Rule

16(e), circulated this opinion among all judges of this court in regular active service. No judge favored a rehearing *en banc* on the matter of the reexamination of the issues.

contrast to that situation, in *Sassi v. Breier*, 584 F.2d 234 (7th Cir. 1978), we held that an amendment to the pleadings after the limitations period had run, specifically naming a defendant designated merely as "John Doe" in the original complaint, would not relate back to the original complaint. We there reasoned that "to hold otherwise could have an unwarranted impact upon the salutary purposes of statutes of limitations." *Id.* at 325.

The rules set forth in these cases provide only a starting point for our analysis, for no circuit, to our knowledge, has specifically addressed the issue of tolling in the context of a class action suit in which there is a class of unnamed defendants. *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), is the seminal case on the application of the tolling doctrine in class action suits. There, the Supreme Court held that a class action suit filed on behalf of a class of unnamed plaintiffs tolls the statute of limitations as to all potential class members. If the class is certified, all putative members of the class remain parties until and unless they receive notice and choose not to continue. If the trial court determines that the class is inappropriate for class action status, the statute begins running at the time of that determination with regard to unnamed plaintiffs.

In justifying the rule announced in *American Pipe*, the Supreme Court reasoned that to hold otherwise would "frustrate the principal function of the class suit . . . –[curtailing] the multiplicity of activity which rule 23 was designed to avoid in those cases where a class action is found 'superior to other available methods for the fair and efficient adjudication of the controversy.'" 414 U.S. at 551, 94 S.Ct. at 765. The Court noted that it felt its holding was not truly inconsistent with the operation of the statute of limitations. Where a named plaintiff commences a class suit, the court stated, defendants are thereby notified "not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judg-

ment," all within the limitations period. *Id.* at 554–55, 94 S.Ct. at 766–67.

*American Pipe*, of course, is not dispositive of this case, for the application of the tolling doctrine to a defendant class was not an issue there. We have found only one decision addressing the statute of limitations problem in the context of a suit brought against a class of defendants. In *Chevalier v. Baird Savings Ass'n*, 72 F.R.D. 140 (E.D.Pa.1976), the district court held that the statute of limitations is not tolled against unnamed members of a defendant class unless and until they are specifically named in an amended complaint. According to the court, "[o]therwise, defendants would be required to defend against actions of which they had no knowledge whatsoever until after the statute of limitations had run." *Id.* at 155, 94 S.Ct. at 767.

We do not agree with the *Chevalier* decision. Unlike the Court in *American Pipe, supra*, we are confronted here with a true conflict between the operation of the statute of limitations and Rule 23. This conflict can be resolved only by the promotion of one rule at the expense of the other, unless due process considerations require a particular result. Our reading of the cases convinces us that due process is not offended by the tolling doctrine, even where a defendant has no notice of a suit until after the limitations period has run. *Cf. United States v. Wahl, supra*. The Supreme Court specifically rejected the contention that due process was abridged by the tolling doctrine in *American Pipe, supra*, 414 U.S. at 556–59, 94 S.Ct. at 767–69.

■ We are persuaded that implicit in the Supreme Court's *American Pipe* decision was the Court's determination that "effectuation of the purpose of litigative efficiency and economy," (which Rule 23 was designed to perform) transcends the policies of repose and certainty behind statutes of limitations. 414 U.S. at 556, 94 S.Ct. at 767. We are guided by that conclusion in the instant case to hold that where a class action suit is instituted against a class of unnamed defendants, pursuant to Rule

23(b)(3), the statute of limitations is tolled as to all putative members of the defendant class. Where, as here, the class is ultimately certified, we hold that the statute is tolled as to any particular defendant until such time as he is notified of the suit and chooses to opt out.

A contrary rule would sound the death knell for suits brought against a defendant class, nullifying that part of Rule 23 that specifically authorizes such suits. This, in turn, would have a potentially devastating effect on the federal courts. Plaintiffs would, in each case, be required to file protective suits, pending class certification, to stop the running of the statute of limitations. In the present instance, this could have resulted in the filing of a staggering number of complaints. As we stated in our decision affirming the district court's certification of both the plaintiff and defendant classes in the case at bar, "[t]he unparalleled, obstructive and duplicative efforts by the carriers to avoid paying refunds that by their nature should have been more or less automatically returned to shippers . . . [in] 1971, underscores the basic wisdom of Rule 23." *Appleton Electric Co., supra,* 494 F.2d at 133.

## IV

Graves contends also that the default judgments were entered in violation of the process that Graves was due under Rules 5(a), 8(a)(3) and 54(c) of the Federal Rules of Civil Procedure. This contention rests on the failure of the plaintiffs and of the district court to give Graves notice of any orders, claims or judgments filed after Graves received notice of the plaintiffs' proposed default order. Graves concedes that it was served with a specific summons and complaint, and that it chose not to answer this complaint or to appear before the district court.

The pertinent portions of the rules alleged violated are:

(a) . . . No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4.

Rule 5(a), Fed.R.Civ.P.

(a) A pleading which sets forth a claim for relief . . . shall contain . . . (3) a demand for judgment for the relief to which [the pleader] deems himself entitled. Relief in the alternative or of several different types may be demanded.

Rule 8(a)(3), *id.*

(c) . . . A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment.

Rule 54(c), *id.*

Graves's basic argument, which relies on all these provisions, is that it had a "right" to default, and to do so knowing the exact liability flowing from this default. Graves did receive on August 14, 1975, a copy of the "proposed default order" which contained the following formula for reckoning the amount of the judgment to be entered against defaulting defendants: 100% of each verified overpayment to a defendant plus 6% interest per annum plus attorney's fees of 33⅓% of the sum of overpayments and interest. While the proposed order did not list damages against each defendant in cardinal numbers, it did allow each defendant to calculate its maximum liability. Graves was consequently able to weigh the advantages and disadvantages of defaulting, and chose to default. There is now no reason to set aside these default judgments.

■ To repeat: prior to its adoption by the district court, Graves received notice of the proposed order. The order defined the shipments for which overpayments had been made, the defaulting defendants to whom they had been made, and the date by which claims for reimbursement must be made. Claims made pursuant to this order were not "new or additional claims for relief" made without notice in violation of Rule 5(a).

■ There was no violation of Rules 8(a)(3) and 54(c), which are in this case complementary: the proposed default order

which was served[4] upon Graves amounted to an amendment of the plaintiffs' prayer for relief. As already noted, this proposed order was definite enough to allow Graves to calculate its maximum liability, and the verification procedure incorporated by the district court's "default order" protected Graves from fraudulent claims that could have invalidated that calculation.

█ No known authority supports Graves's asserted proposition that defendants have a "right" to default and to know the exact measure of liability that will flow from a prospective default. That proposition cannot be deduced from the cited case of *Bass v. Hoagland*, 172 F.2d 205 (5th Cir.), *cert. denied*, 338 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494 (1949). *Bass* dealt with the notice to defendants required by Rule 55(b)(2), which states that notice must be given prior to a hearing on a plaintiff's application for judgment "[i]f the party against whom judgment by default is sought *has appeared in the action. . . .*" (Emphasis added). Neither *Bass* nor the portion of the Federal Rule it construes is apposite.

Insofar as Rule 55 bears in any way on this case, it implies that a trial judge may enter a default judgment even though a plaintiff's claim is not for a sum certain. Rule 55(b)(1) allows the court clerk to enter a default judgment when the plaintiff's claim "is for a sum certain or for a sum which can by computation be made certain. . . ." Rule 55(b)(2) requires that a default judgment be entered by the court "[i]n all other cases . . ."; Professor Moore was thus prompted to observe that "[t]he entry of a judgment by default should be by the court: if the claim is not for a certain or ascertainable sum . . ." (Footnote omitted). 4 J. Moore & W. Taggart, Moore's Federal Practice ¶ 55.05[1] at p. 55–51 (1979–80 ed.).

Graves's most persuasive procedural argument is its allegation that, contrary to Rule 54(c), the default judgments "exceed in amount that prayed for in the demand for judgment." Graves contends that the shippers' complaints were the sort of "open end complaints" disapproved in *Bowles v. Fode*, 8 Fed.Rules Serv. 89 (D.N.D.1945). Putting aside the interesting question, can an unstated amount be exceeded, we repeat that the proposed default order received by Graves contained a formula by which Graves could calculate its maximum liability. This is the answer to the question posed in *Bowles v. Fode* of how a money judgment by default could be taken by plaintiffs who did not allege quantified damages. See *id.* at 92. (The question was purely hypothetical in *Bowles*, which was not a case involving default judgments.)

The apparent purpose of limiting default judgments to the amount prayed for is to protect defendants who choose to default, relying on the damage ceilings contained in plaintiffs' prayers. There is no such ceiling that Graves relied on in choosing to default, unless it be one of Graves's own calculation. Graves is thus not now succored by Rule 54(c).

## V

█ Graves's final contention is that for numerous reasons roughly 100 of the default judgments against it are void or inaccurate in amount and should be vacated under Rule 60(b), Fed.R.Civ.P. A motion pursuant to this rule is directed to the discretion of the court entering the judgment, not, as Graves apparently believes, to the discretion of this Court. *E. g., United States v. An Undetermined Quantity of an Article of Drug*, 583 F.2d 942 (7th Cir. 1978). Our review of denial of motions under this rule is limited to determining if the district court abused its discretion. *E. g., De Filippis v. United States*, 567 F.2d 341 (7th Cir. 1977).

**4.** The record does not disclose whether this service was in the manner prescribed by Rule 4, Fed.R.Civ.P. However, it is uncontested that Graves received a copy of the proposed order weeks before it was entered by the district court. Graves has not challenged the propriety of the mode of service of this order. This defense has been waived. See Rule 12(h), Fed. R.Civ.P.

Since Graves has offered no more than its assertions that it had meritorious defenses to the challenged judgments, the district court has not abused its discretion in denying Graves's motion.

Affirmed. Costs to appellee.