J. Fred CREEK, Plaintiff–Appellant,

v.

VILLAGE OF WESTHAVEN, Illinois Housing Development Authority, Village of Orland Park, et al., Defendants–Appellees.

No. 97–1904.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1997.

Decided May 8, 1998.

Warren S. Radler, Steven R. Merican (argued), Rivkin, Radler & Kremer, Chicago, IL, for J. Fred Creek.

George J. Sotos, Office of the State's Attorney of Dupage County, Wheaton, IL, for Village of Westhaven.

Robert L. Graham, Jenner & Block, Chicago, IL, for Illinois Housing Development Authority.

Russell J. Hoover, Jenner & Block, Chicago, IL, Hugh C. Griffin, Richard F. Johnson, Daniel J. Zollner (argued), Leslie J. Rosen, Lord, Bissell & Brook, Chicago, IL, for Village of Orland Park.

Edward A. McCarthy, Matyas & Norris, Chicago, IL, for Orland Park School District 135.

Hugh C. Griffin, Richard F. Johnson, Daniel J. Zollner (argued), Leslie J. Rosen, Lord, Bissell & Brook, Chicago, IL, Orland Fire Protection District.

Douglas W. Graham, Chicago, IL, for Orland Township.

Before POSNER, Chief Judge, and BAUER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

This appeal involves a civil rights suit that has been before us previously, in 1996. See *Creek v. Village of Westhaven,* 80 F.3d 186 (7th Cir.1996) (*"Creek I"*). At that time we stated that this case was "unfortunately protracted." The dispute is now closing in on its sixteenth birthday, a landmark that no piece of litigation should reach. Our decision today, hopefully, will provide an overdue closure to the controversy.

The plaintiff Fred Creek, a real estate developer, brought suit against a community[1] claiming that the community acted with racial animus in stymieing his efforts to build an apartment complex. The current appeal does not relate to the merits of his claim but, rather, to the impact that our earlier decision had on Creek's ability to seek damages. In our earlier decision, we ruled that Creek had

---

1. The community, the defendant Village of Westhaven, has changed its name since the inception of litigation to "Orland Hills." Other defendants include the municipality of Orland Park, the local school district, the local fire department, and individual representatives of the community.

a viable damages claim, and we discussed the proper way to measure those damages. We then remanded the case to the trial court, instructing the judge to adopt our ruling on damages. In the trial court, Creek argued that our holding regarding measure of damages was not binding because it was merely dicta, and in turn he proposed his own measure of damages. The district judge disagreed and stated that the measure of damages that the court adopted was the law of the case. Creek appealed the district court's decision and requested that we rule that the "law of the case" does not apply to our earlier ruling. He further asked that we adopt his proposed legal conclusion regarding measure of damages. Lastly, he petitioned us for a ruling that the law we set forth in our earlier review in applying the damages question would in effect deprive him of his right to bring a damages question before a jury.

We re–affirm our prior holding regarding the law to be applied to the measure of damages and agree with the trial court that this holding constituted the law of the case. Furthermore, we are convinced that our measure of damages does not improperly invade the province of the jury.

## I. BACKGROUND

Because our earlier decision gave full treatment to the facts of this case (see *Creek I,* 80 F.3d at 188–89), and because we are reviewing specific and limited issues in this appeal, we will set forth only those facts which are necessary for our decision.

In the mid–1970s, plaintiff-appellant Fred Creek sought to build an apartment complex in the Chicago suburb known as the Village of Westhaven, Illinois. Westhaven, now known as "Orland Hills," was populated exclusively with people of the Caucasian race at the time. Although the Village supported Creek's efforts at first, on January 9, 1979, it

learned that Creek was seeking federal assistance for part of the construction, then shortly after denied him the requisite building permit. Creek, alleging that the Village refused the building permit because it felt that a federally assisted apartment complex would attract minorities, brought suit in the Illinois state court system on August 29, 1979, requesting an injunction against the Village's withholding of the permit. The court issued the injunction on April 14, 1980 and awarded no damages.

Despite the order of the court, the Village and its allies continued to obstruct Creek's development of the property, engaging in (as we described it in the first appeal) "a far-reaching, concerted effort to enlist the efforts of state and federal officials to prevent Creek from building a rent-supported apartment complex in Westhaven. The motive, we assume for purposes of this appeal, was racial." *Id.* at 189.

On July 1, 1980, Creek, who says his hand was forced by the unlawful behavior of the defendants, transferred ownership of the project to a limited partnership named Pheasant Ridge Venture. The transfer hardly signaled the end of Creek's participation in the project—he became the sole general partner of the new partnership and owned ninety percent of it—but he did sell a ten percent interest in the venture and in return received $60,000. A couple months later Pheasant Ridge Venture conveyed its interest to a joint venture with Shell Development Corporation. The joint venture was called PRV/Shell.

On November 10, 1982, Creek filed the subject action,[2] seeking damages for various civil rights violations.[3] The district court allowed PRV/Shell to intervene as plaintiff on April 15, 1992. On October 12, 1992, PRV and PRV/Shell settled their claims against the defendants for $1 million. Creek, owing to his interest in the partnership, received

---

**2.** It was originally filed in the Circuit Court of Cook County, Illinois; it was removed to the Northern District of Illinois on March 16, 1983.

**3.** Plaintiff's action was for violations of 42 U.S.C. §§ 1981, 1982, 1985(3) and 1986; the Fair Housing Act, 42 U.S.C. §§ 3601 et seq.; the constitutional guarantees of due process and equal pro-

tection pursuant to the Fifth and Fourteenth Amendments to the Constitution of the United States; intentional interference with prospective business advantage; intentional interference with existing contractual relationship; breach of contract; negligence; and conspiracy.

about $136,000 of that. Creek as an individual was not covered by the settlement, and he continued the case as the sole plaintiff, with trial scheduled for January 1994. The case never did make it to trial, for the trial court granted the defendants' summary judgment motion, holding that Creek's suit was barred on res judicata grounds: the court ruled that Creek should have sought damages in the original, state court suit filed in 1979.

Creek appealed the decision of the court, which gave rise to our holding in *Creek I*. In *Creek I*, we reversed the district judge's res judicata decision, holding that the 1979 suit did not present a bar to his current action for damages because Creek had not been able to "estimate his full damages" at the time of the first suit, and "[i]f, when the claim arises, the amount of damages cannot be quantified, then you can delay bringing your suit for damages until they can be quantified." *Id.* at 190 (citations omitted). Our decision regarding res judicata was based on the contrast between, on the one hand, Creek's inability to seek damages by the time the state suit concluded (April 14, 1980), and, on the other hand, his ability to seek damages at the time of *Creek I*.

Of course, before ruling thus, we had to undertake an analysis to determine whether Creek was eligible for post-April 14 damages. In the first part of this analysis, we determined that he was not eligible for damages after July 1, 1980, because on that date he assigned all of his interest in the project to the PRV partnership, and in Illinois a partner may not sue individually to recover damages for an injury to the partnership. *Id.* at 191, citing *Sindelar v. Walker*, 137 Ill. 43, 27 N.E. 59 (1891).

While we foreclosed the possibility of Creek receiving damages for anything that occurred after July 1, 1980, we held open the possibility that Creek could seek damages for events that occurred before July 1, 1980 (but after April 14, 1980), while he still had interest in the project as an individual: "We have focused on events between April 14, 1980 and July 1, 1980, for Creek must prove that he was injured in consequence of those events in order to counter the defense of res judicata by showing that he was injured by wrongful conduct that occurred after the final judgment in his first suit [and before he surrendered his interest to the partnership]." *Creek I*, 80 F.3d at 191.

Based on the state of the record at that time we were in no position to determine whether in fact Creek had suffered any injury between April 14, 1980 and July 1, 1980. "But," we held, "we must assume in the present posture of the case that he received inadequate consideration [for selling off ten percent of the project] because of his distressed circumstances brought about by the defendants' conspiracy." *Id.* at 190. Of course, if in fact he had received fair value at the time he sold the ten percent interest, then he would not be entitled to any damages: "[I]f he surrendered this expectation for a commensurate present-value sum, he would no more be injured than any other entrepreneur who decides to share risk and reward by selling a piece of his enterprise." *Id.* at 190.

We remanded the case and directed the trial court to determine whether Creek had received inadequate consideration because of his distressed circumstances brought about by the defendants' conspiracy. *Id.* at 190, 194.

On remand, the district judge, relying on our decision in *Creek I*, held it to be the law of the case that "the measure of damages in this case is the difference between the amount Creek received when he brought in a ten-percent partner on July 1, 1980, and the present value of that ten percent on that date." Upon hearing of this ruling, Creek protested that he would not be eligible for damages under such a measure. Seeking an immediate appeal, he requested and received certification of the district court's ruling and petitioned this Court for a hearing date. We denied his petition. The defendants moved for summary judgment, on the grounds that this Court had clearly enunciated the proper method of measuring damages, and Creek had admitted that, under this measure, he had no damages. Creek opposed the motion and argued that the district court's ruling on the measure of damages was incorrect.

On March 31, 1997 the district court granted the defendants' motion for summary judgment. This appeal followed.

## II. ISSUES

This appeal addresses three issues: (1) Whether the district court properly determined that our discussion in *Creek I* on damages constituted "law of the case"; (2) Whether a proper measure of Creek's damages is the difference between the amount he received when he brought in a ten percent partner on July 1, 1980 and the present value of that interest on that date; (3) Whether the district court deprived Creek of a substantial right by taking from the jury the ability to assess the proper measure of damages.

## III. DISCUSSION

### A. Standard of Review

■ This appeal stems from the district court's grant of summary judgment based on conclusions of law relating to the law of the case. We review such a summary judgment de novo. *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290 (7th Cir.1998) (citations omitted).

### B. Law of the Case

■ The law of the case doctrine "is a rule of practice, based on sound policy [and recites] that, when an issue is once litigated and decided, that should be the end of the matter." *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir.1982), citing *Barrett v. Baylor*, 457 F.2d 119, 123 (7th Cir.1972) and *United States v. United States Smelting, Refining & Melting Co.*, 339 U.S. 186, 198, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950). The consistency provided by the rule "protects parties 'from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action....'" *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir.1991), quoting *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). "The 'most elementary application' of this doctrine is that when a court of appeals has reversed a final judgment and remanded the case, the district court is required to comply with the express or implied rulings of the appellate court." *Waid v. Merrill Area Public Schools*, 130 F.3d 1268, 1272 (7th Cir. 1997), citing *Williams v. Commissioner*, 1 F.3d 502, 503 (7th Cir.1993) (other citations omitted).

■ "While a mandate is controlling as to matters within its compass, [however,] on the remand a lower court is free as to other issues." *Sprague v. Ticonic National Bank*, 307 U.S. 161, 168, 59 S.Ct. 777, 781, 83 L.Ed. 1184 (1939); *Gertz*, 680 F.2d at 532. Therefore, it is essential to determine what issues were actually decided in order to define what is the "law of the case." This requires a careful reading of the reviewing court's opinion: observations or commentary touching upon issues not formally before the reviewing court do not constitute binding determinations. See *Quern v. Jordan*, 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979), cited by *Gertz*, 680 F.2d at 533; see also *Klingman v. Levinson*, 114 F.3d 620, 628 (7th Cir.1997) (law of the case not applicable because the prior decision was dicta).

We agree with the trial judge's decision and hold that she was correct in deciding that *Creek I* established law of the case as to the measure of damages: our decision regarding "measure of damages" in *Creek I*, far from being dicta, was necessary to our resolution of the issue that faced us. We were asked to decide in *Creek I* whether Creek was trying to obtain relief that he could have obtained in a prior suit: in other words, did Creek squander an opportunity to seek damages in the state court action? We held, in *Creek I*, that he had not squandered his opportunity. He was unable to recover damages in the state court action, because the damages could not be figured at the time. On the other hand, he could seek damages in 1996. Of course, if we were going to hold that Creek could seek damages in 1996, it was necessary that we first determine the amount of damages available. Initially we explained what he could not seek, then proceeded to set forth what he could seek. He could not seek damages, we decided, for any harm that he incurred after July 1, 1980, "because the right if any to such damages belongs to other entities." *Creek I* at 194.

He could, though, seek damages for injuries that he might have incurred before July 1, 1980, that is, before he transferred his interest to the partnership. The damages that Creek could seek were the difference between the amount he received when he brought in a ten-percent partner on July 1, 1980, on the one hand, and the present value of that ten percent on July 1, 1980, on the other hand.

Because the issue in *Creek I* required a determination regarding what damages Creek could properly seek in 1996, and because our holding resolved the issue by delineating the measure of damages available to him, the measure of damages we laid out was an integral part of our decision—not dicta—and triggered the "law of the case" constraints upon the district court.

 Besides asking us to simply rule that the trial court was not bound by the "law of the case" (with the hope that the trial court would eventually adopt his proposed measure), Creek obviously asks us to adopt the measure he prefers. We decline to do so, holding that it is proper for us to follow the law of the case. This court has "long held that 'matters decided on appeal become the law of the case to be followed ... on second appeal, in the appellate court, unless there is plain error of law in the original decision.'" *Appleton Electric Co. v. Graves Truck Line, Inc.*, 635 F.2d 603, 607 (7th Cir.1980), quoting *Kaku Nagano v. Brownell*, 212 F.2d 262, 263 (7th Cir.1954), and quoted in *Devines v. Maier*, 728 F.2d 876, 880 (7th Cir.1984). See also *Waid v. Merrill Area Public Schools*, 130 F.3d 1268, 1272 (7th Cir.1997), quoting 18 James Wm. Moore et al., Moore's Federal Practice § 134.21[3][b] (3d ed. 1997) ("'The law of the case doctrine generally binds a court to its own previous decision on issues arising earlier in the litigation as well as to decisions entered by a higher court earlier in the litigation'"). In *Appleton*, this Court explained that, though the "law of the case" doctrine does not bar us from reconsidering one of our prior rulings, it presents solid policy reasons to refrain from doing so, as it is

> based on the salutary and sound public policy that litigation should come to an

end. It is predicated on the premise that "there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions or speculate of chances from changes in its members," and that it would be impossible for an appellate court "to perform its duties satisfactorily and efficiently" and expeditiously "if a question, once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal" thereof.

635 F.2d at 607–08, quoting *White v. Murtha*, 377 F.2d 428, 431 (5th Cir.1967). These policy considerations induce us to follow the law of the case unless justice—the paramount policy consideration—requires a contrary result. The demands of justice require that we not follow an earlier ruling "'where the law as announced is clearly erroneous, and establishes a practice which is contrary to the best interests of society, and works a manifest injustice in the particular case.'" *Devines*, 728 F.2d at 880, quoting *United States v. Habig*, 474 F.2d 57, 60 (7th Cir.1973) (other citation omitted). "Accordingly, this court has, on a limited number of occasions, reconsidered a previous adjudication and has concluded that our former ruling was erroneous." *Id.*, citing *Appleton*, 635 F.2d at 608 and *Habig*, 474 F.2d at 60.

 The case under consideration is not one of those rare occasions. Our prior ruling is the proper measure of damages; Creek's alternative measure of damages is not. Creek's proposal asks us to "put him in the position he was in before July 1, 1980, the exclusive owner of 100 percent" of the right to build the apartments. He argues that he "did not merely convey 10 percent of the project to another investor, but rather conveyed full rights to build the development to Pheasant Ridge Venture, a limited partnership. In return, he obtained a ninety percent ownership in a general partnership" that was "distressed." Creek claims that a jury should determine how much this entire exchange hurt him, and that a jury should be able to look at everything he gave up, not just the ten percent.

What Creek is really saying is that the ninety percent ownership he gave up had much more value than the ninety percent partnership share he received, seeing as the partnership was "distressed." The problem with this approach is that Creek is trying to peddle a horse that has already been sold: the partnership was already relieved from its distress once, by a $1 million settlement payment (of which Creek got $136,000). Creek cannot come back now and ask the court to relieve the partnership from its distress; it has already been relieved from its distress, and further relief would be duplicative of the settlement. We therefore reject Creek's proposed measure of damages and re-affirm our holding that the proper measure of Creek's damages is the difference between the $60,000 he received for the ten percent share of the partnership and the present value of that ten percent.

### C. Creek's Right to a Jury

Lastly, Creek argues that our measure of damages wrongly deprived him of his right to have a jury assess damages.

We disagree. Contrary to Creek's supposition, there is no absolute right to have a jury assess damages. A jury's discretion in awarding damages is limited by the parameters of what the law will allow ((see, e.g., *McLaughlin v. State Farm Mut. Auto. Ins. Co.*, 30 F.3d 861, 871 (7th Cir.1994) (reversing jury's award of punitive damages because, as a matter of law, punitive damages were not available)); *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1392 (7th Cir.1984) (holding that the Seventh Amendment reserves determination of damages, in jury trials within its scope, to the jury; however, a federal judge can set aside a jury verdict as excessive, and if a plaintiff is entitled to a particular amount of damages as a matter of law, can fix the proper level of damages); cf. *American Nat'l Bank & Trust Co. of Chicago*, 125 F.3d 420, 437 (7th Cir.1997) ("a jury has wide discretion in determining damages, so long as it has a reasonable basis"), citing *Dresser Indus., Inc. v. Gradall Co.*, 965 F.2d 1442, 1447 (7th Cir. 1992)), and it is the court's instructions which hopefully assist the jury. The court, then, serves the function of establishing the measure of damages, and only then may a jury exercise its discretion to assess damages. See 22 Am.Jur.2d Damages § 989 at 1028 (1988) ("Generally speaking, the court should instruct the jury as to the proper measure of damages in the case and the elements to be considered in fixing them.... It may be error to leave the measure of damages entirely to the discretion of the jury or to intimate to them that the damages are to be assessed without the application of any rule of law whatever") (citations omitted). See also, e.g., *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 155, 92 S.Ct. 1456, 1473, 31 L.Ed.2d 741 (1972) (in securities cases involving defrauded sellers and 17 C.F.R. § 240.10b–5(b), Supreme Court established the proper measure of damages), and *Transcraft, Inc. v. Galvin, Stalmack, Kirschner & Clark*, 39 F.3d 812, 820–21 (7th Cir.1994) (in remanding legal malpractice case for new trial, guidance was given to district court as to correct measure of damages).

By limiting Creek's possible damages to the measure that we laid out in *Creek I*, all that the district court did was ensure that a jury verdict would not be unlawful or unreasonable. Such a limitation is not an abuse on the part of the court, nor is it a deprivation suffered by Creek.

## IV. CONCLUSION

We hold that the district court correctly concluded that the measure of damages we laid out in *Creek I* is law of the case. We leave *Creek I*'s holding undisturbed, and also rule that the appellant's right to a jury trial was not violated by the court's proper determination of the measure of damages. AFFIRMED.