**UNIVERSITY OF WEST VIRGINIA, BOARD OF TRUSTEES,**
Plaintiff–Appellee,

and

**West Virginia University Research Corporation, Third Party Defendant–Appellee,**

and

**James Earl Smith and Integral Concepts, Inc., Third Party Defendants,**

v.

**Kurt L. VANVOORHIES,**
Defendant/Third Party Plaintiff–Appellant.

No. 02–1533.

United States Court of Appeals, Federal Circuit.

DECIDED: Sept. 3, 2003.

·David E. Tungate, Eckert Seamans Cherin & Mellott, LLC, of Pittsburgh, PN, argued for plaintiff-appellee and third party defendant-appellee, The University of West Virginia, Board of Trustees and West Virginia University Research Corporation. With him on the brief were An-

**1292**

drew G. Fusco and Jeffrey A. Ray, of Morgantown, WV.

Robert A. Dunn, Dinnin & Dunn, P.C., of Auburn Hills, MI, argued for third party defendant/third party plaintiff-appellant Kurt L. VanVoorhies. With him on the brief was Michael T. Raggio. Of counsel on the brief were Kenneth A. Martin, Martin & Associates, of Washington, DC; and William A. Kolibash, of Philips, Gardill, Kaiser & Altmayer, of Wheeling, WV.

Before LOURIE, CLEVENGER, and PROST, Circuit Judges.

CLEVENGER, Circuit Judge.

Kurt L. VanVoorhies ("VanVoorhies") appeals from the denial of his motion pursuant to Federal Rules of Civil Procedure 59 and 60 for relief from an order requiring the assignment of certain patents to the University of West Virginia Board of Trustees (the "University"). Because the district court abused its discretion in denying VanVoorhies's motion for relief, we reverse.

## I

### A

This appeal has its roots in an ownership dispute which was previously before this court. *See Univ. of W.Va. v. Vanvoorhies,* 278 F.3d 1288 (Fed.Cir.2002) ("*UWV I*"). That dispute originated in the early 1990s, when VanVoorhies was a graduate student at the University. *Id.* at 1292.

In 1991, VanVoorhies co-invented a contrawound toroidal helical antenna, which became embodied in U.S. Patent Application 07/992,970 (the "'970 Application") and later issued as U.S. Patent No. 5,442,369 (the "'369 Patent"). *Id.* As required by the applicable University patent policy, VanVoorhies and his co-inventor assigned their rights to the '369 patent to the University. *Id.*

In December of 1993, around the time he received his doctoral degree from the University, VanVoorhies invented a half-wave bifilar contrawound toroidal helical antenna (the "second invention"). *Id.* at 1293. Initially, VanVoorhies informed the University about the second invention and urged the University to obtain patent coverage for that new matter. *Id.* He subsequently changed his mind, and declined to respond when the University sent him a draft application for the second invention. *Id.* Despite VanVoorhies's lack of response, the University claimed coverage for the second invention through U.S. Patent Application 08/486,340 (the "'340 Application"), which listed VanVoorhies as the inventor and would ultimately issue as U.S. Patent No. 6,028,558 (the "'558 Patent"). While the University sought patent protection for the second invention, VanVoorhies independently submitted a number of patent applications directed to the same second invention: (1) U.S. Patent Application 08/514,609 (the "'609 Application"), which would issue as U.S. Patent No. 5,743,353 (the "'353 Patent"); (2) U.S. Patent Application 08/514,610 (the "'610 Application"), which was filed to provoke an interference with the '340 Application; and (3) a third patent application, which was a continuation of the '609 Application and which would issue as U.S. Patent No. 5,952,978 (the "'978 Patent"). *Id.*

Two years later, the University sued VanVoorhies, alleging that the inventor breached his duty to assign the second invention. *Id.* at 1294. VanVoorhies responded by filing extensive counterclaims and third-party complaints. *Id.* The district court disposed of numerous issues in the case on summary judgment and issued a final ruling in favor of the University on May 25, 2000 (the "May 25 Order").

On appeal from that summary judgment, we affirmed all of the district court's de-

terminations. *Id.* at 1299–1305. Most relevant to this instant appeal, we "affirm[ed] the district court's grant of summary judgment that VanVoorhies breached his obligation to assign the '340 and '609 applications to WVU, and we affirm[ed] its order requiring him to execute an assignment of those applications and the issued patents based thereon." *Id.* at 1299.

## B

In light of our ruling in *UWV I*, the University asserted its rights to VanVoorhies's patents and pending patent applications. This assertion of rights was the genesis of this second appeal.

In March of 2002, the University asked VanVoorhies to assign the '340, '609 and '610 Applications and to disclose any additional applications already filed (or intended to be filed). On April 29, 2002, VanVoorhies replied to the University's inquiry. In that reply, VanVoorhies refused to execute the University's proposed assignment forms, but instead enclosed three newly drafted assignments which only conveyed rights to the patent applications referenced in the May 25 Order and to their respective foreign counterparts. In that reply, VanVoorhies also requested the monetary incentive awards to which he believed he was entitled, and declined to make the requested disclosures. He further stated that, unless the University reimbursed him for the $33,907 in fees already incurred to prosecute the assigned applications and their foreign counterparts, he would abandon his pending applications. On May 10, 2002, the University responded that it would not pay the $33,907 in fees, intimated that VanVoorhies's demands constituted an improper attempt to modify the district court's final judgment, and demanded payment of court fees related to that court order. VanVoorhies retorted in a letter dated May 16, 2002, that he had fully complied with the district court's ruling in submitting the newly drafted assignments enclosed with the letter dated April 29, 2002, and that he refused to pay anything but $370 in court costs.

On June 4, 2002, the University sought relief from the district court by filing an *ex parte* motion for an order under Federal Rule of Civil Procedure 70[1] to enforce the May 25 Order. On that same day, the district court granted the University's motion and entered an order pursuant to Rule 70 (the "Rule 70 Order"), instructing VanVoorhies's attorney to execute the University's proposed assignment forms. The district court further issued a separate order on that same day setting a status conference for July 2, 2002.

On June 18, 2002, VanVoorhies moved pursuant to Federal Rules of Civil Procedure 59 and 60 for relief from the Rule 70 Order. The district court held a status hearing on July 2, 2002, and disposed of VanVoorhies's motion for relief by issuing a short order that same day (the "Order Denying Relief"). In that order, the district court denied VanVoorhies's motion for relief because the court "found that the three assignments at issue included patents that were part of the litigation in this matter .... [and] found that the patent assignments should be executed immediately by counsel for the defendant, Kenneth Martin, as ordered by the Court in its June 4, 2002 Order [the Rule 70 Order]."

---

1. Federal Rule of Civil Procedure 70, titled "Judgment for Specific Acts; Vesting Title," provides in relevant part:

 If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party.

As directed by the Order Denying Relief, VanVoorhies's attorney executed on behalf of his client the assignments prepared by the University. The trial court also denied without prejudice VanVoorhies's oral motion for costs made during the status hearing.

 On July 31, 2002, VanVoorhies appealed the Order Denying Relief. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).[2]

## II

 This appeal requires that we determine whether the district court properly denied VanVoorhies's motion for relief under Rules 59 and 60. Because the denial of such a motion is a purely procedural question not unique to patent law, we review that denial under the law of the regional circuit, in this case, the Fourth Circuit. *Ajinomoto Co. v. Archer–Daniels–Midland Co.*, 228 F.3d 1338, 1350 (Fed.Cir. 2000) (applying Third Circuit law to review of Rule 59 motion); *Marquip, Inc. v. Fosber Am., Inc.*, 198 F.3d 1363, 1369 (Fed. Cir.1999) (reviewing denial of a Rule 60(b) motion under Seventh Circuit law). The Fourth Circuit applies an abuse of discretion standard in reviewing the denial of a Rule 59(e) or 60(b) motion. *NOW v. Operation Rescue*, 47 F.3d 667, 669 (4th Cir. 1995) (applying abuse of discretion standard to the review of a Rule 60(b) motion); *Temkin v. Frederick Co. Comm'rs*, 945 F.2d 716, 724 (4th Cir.1991) (same in the context of Rule 59). In the Fourth Circuit, a district court abuses its discretion when the court refuses to exercise its discretion, fails to adequately take into account judicially recognized factors constraining its exercise of discretion, or when the court's exercise of discretion rests on an erroneous factual or legal premise. *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir.1993).

In this appeal, VanVoorhies argues that the trial court incorrectly denied his motion for relief because it erred in determining that the Rule 70 Order was properly granted. If that is the case, then the court's denial would rest on an erroneous premise and would thus rise to the level of an abuse of discretion. *See Collison v. Int'l Chem. Workers Union, Local 217*, 34 F.3d 233, 238–40 (4th Cir.1994) (reversing denial of Rule 59 motion because the ruling challenged by the Rule 59 motion was legally erroneous). To decide if an abuse of discretion occurred in this case, we must therefore decide whether the district court correctly issued its Rule 70 Order.

Under Rule 70, the trial court may order the performance of specific acts by a third party on behalf of a disobedient party "[i]f a judgment directs a party ... to perform any other specific act and the party fails to comply within the time specified." Fed. R.Civ.P. 70. According to VanVoorhies, the district court improperly acted under Rule 70, because he has faithfully complied with the district court's mandate by enclosing with his correspondence dated April 29, 2002, assignments mirroring the

---

2. We note that, in its response brief, the University has again challenged our jurisdiction over this appeal, arguing that the Rule 70 Order did not constitute a new judgment. We have already addressed that challenge when we denied the University's motion to dismiss this appeal before oral argument. *Univ. W. Va. v. VanVoorhies*, No. 02–1533 (Fed.Cir. Feb. 11, 2003) (nonprecedential order). In that order, we conclusively decided that the Rule 70 Order was a new judgment from which VanVoorhies may appeal. Although we have considered the University's renewed jurisdictional challenge, we decline to modify our previous ruling and therefore reaffirm that the Rule 70 Order constitutes an appealable final judgment. *See Conway v. United States*, 326 F.3d 1268, 1276–77 (Fed.Cir.2003) (concluding, based on Supreme Court precedent, that an order that appears to modify an earlier judgment restarts the period within which a party may seek appellate review).

language of the May 25 Order.[3] The University rejoins that the assignments prepared by VanVoorhies violated the May 25 Order by omitting three patents already adjudged to be the University's property: U.S. Patent Nos. 6,218,998, 6,239,760, and 6,320,550 (collectively, "the second generation patents").

Thus, the dispositive question for this appeal is whether VanVoorhies was required to assign the second generation patents to the University. As conceded by the parties, VanVoorhies's obligation to assign could possibly arise from only three sources: (1) the original assignment of the '970 Application; (2) the University patent policy; and (3) the May 25 Order. We consider each of those sources in turn.

■ The original assignment of the '970 Application does not compel the inventor to assign his rights in the second generation patents to the University. Indeed, the scope of that assignment agreement is limited by its plain language:

The undersigned does (do) hereby sell, assign, transfer and set over unto said assignee, its successors and assigns, the entire right, title and interest in and to

*said invention or inventions,* as described in the aforesaid application, in any form or embodiment thereof, and in and to the aforesaid application; ... also the entire right, title and interest in and *to any and all patents or reissues or extensions* thereof to be obtained in this or any foreign country upon said invention or inventions *and any divisional, continuation, continuation-in-part or substitute applications* which may be filed upon said invention. or inventions in this or any foreign country; and the undersigned hereby authorize(s) and request(s) the issuing authority to issue any and all patents on said application or applications to said assignee or its successors and assigns.

*UWV I,* 278 F.3d at 1292–93 (emphases added). Construing this contract *de novo* as a matter of law, it is clear that the assignment agreement only covers the exact invention embodied by the '970 Application; its reissues or extensions; and its immediate lineal descendants, including divisionals, continuations, continuations-in-part, or substitute applications. As conceded by the University,[4] the second gen-

---

3. VanVoorhies conceded at oral argument that he does not dispute the University's ownership of the patent applications and patents previously adjudicated in the May 25 Order and addressed in our *UWV I* opinion. These undisputed applications and patents are (a) U.S. Patent No. 5,442,369, which issued from the '970 Application; (b) U.S. Patent No. 6,028,558, which issued from the '340 Application; (c) U.S. Patent No. 5,734,353, which issued from the '609 Application; (d) the '610 Application; (e) U.S. Patent No. 6,204,821, which issued from a continuation of the '340 Application; and (f) U.S. Patent No. 5,952,-978, which issued as a continuation of the '609 Application. VanVoorhies has also represented to this court that he has abandoned U.S. Application No. 60/056,610, rendering any ownership dispute over that application moot. Consequently, these patents and applications are not at issue in this appeal.

4. The following is an unofficial transcript of the conversation between the court and Mr. David E. Tungate, counsel for the University, at the August 5, 2003, oral argument before this court:

The Court: Just so that I can understand where we are, because we are running out of time in the argument. You've said you agreed that the second generation patents are not covered by the original assignment. That makes life a little easier for us. You've agreed that whether the second generation patents fall under the University policy has yet .to be adjudicated, hasn't been decided yet. So the only question is whether or not the second generation patents fall within the May 25 Order. And am I correct in understanding that your sole ground for believing that they fall within the order is because they constitute "technology embodied"?

Mr. Tungate: Yes, your honor.

eration patents do not fall into any of those covered categories, and are therefore outside of the scope of the assignment agreement. In other words, the University cannot base its ownership claim over the second generation patents on the assignment agreement related to the '970 Application.

■ Similarly, the University patent policy cannot presently form the basis of VanVoorhies's obligation to assign the second generation patents. That patent policy "applies to any invention conceived or first reduced to practice under terms of contracts, grants or other agreements," *UWV I*, 278 F.3d at 1292–93, and provides that the University "owns all inventions that are made by University personnel or made with substantial use of University resources." *Id.* at 1298. But whether or not the second generation patents fall within the scope of the patent policy remains to be decided, since they were not part of the original litigation. Although the applications of those three patents were the subject of a discovery dispute resolved by the district court, the ownership of those three patents was never actually litigated, as evident from the complaint, the Joint Pretrial Order, and the summary judgment memorandum opinion. The complaint leading to the first appeal did not mention the second generation patents, alleging solely that VanVoorhies's failure to assign the inventions disclosed in the '340, '609, and '610 Applications and patents issuing from those applications constituted a breach of duty. Even the Joint Pretrial Order, which supersedes the pleadings pursuant to Federal Rule of Civil Procedure 16 and frames the issues remaining for trial, fails to mention the second generation patents. Indeed, the sole issue for trial, according to the Pretrial Order, was whether the University owned the invention disclosed and claimed in the

'609 Application, the '353 Patent, and the '978 Patent. Furthermore, the summary judgment ruling, which obviated the need for a trial, did not address or even discuss the second generation patents. The only issues resolved in that opinion were VanVoorhies's numerous counterclaims and the University's ownership claims to the '970, '340, '609, and '610 Applications based on a theory of breach of contractual duty. As necessarily conceded by the University,[5] its assertion of ownership rights over the second generation patents based on the patent policy has yet to be adjudicated on the merits.

■ Without the original assignment and the patent policy as available bases for the Rule 70 Order, the May 25 Order stands as the sole possible support for the conclusion that VanVoorhies had to assign the second generation patents. And that potential support can arise from only two paragraphs—Paragraphs 6 and 7—which direct VanVoorhies to assign patents and patent applications. Those two paragraphs provide:

The Court, therefore, ORDERS that

\* \* \* \*

6. The defendant, Kurt L. VanVoorhies, assign to the plaintiff all right, title and interest in Patent 6,028,558, Application '340 and any other patent issuing from Application '340, and all worldwide right, title and interest in the invention and technology embodied and disclosed therein, and to execute the declaration for Application '340 for filing on behalf of the plaintiff and in the United States Patent and Trademark Office;

7. The defendant, Kurt L. VanVoorhies, assign to the plaintiff all right, title and interest in Patent '353, patent

---

**5.** *See supra* note 4.

'978, Application '610, and Application '609, and any patent issuing from such applications and all worldwide right, title and interest, in the inventions.

It is mainly on these two paragraphs that the University rests its assertion of ownership entitlement to the second generation patents.

On its face, Paragraph 7 does not embrace the second generation patents either explicitly or by implication. Indeed, the plain language of that paragraph does not even mention those three patents or their respective applications. Moreover, as the University admitted,[6] the phrase "any patent issuing from such applications" only encompasses immediate lineal descendants of the applications listed in Paragraph 7. Since the second generation patents are not immediate lineal descendants of any listed applications, they fall outside of the ambit of Paragraph 7.

This leaves Paragraph 6. Like Paragraph 7, the text of Paragraph 6 makes no explicit mention of the second generation patents or their applications. And, as with Paragraph 7, the phrase "any other patent issuing from Application '340" only covers an immediate lineal descendant and cannot therefore include the patents at issue. The University, however, points us to the remaining provision of that paragraph that requires VanVoorhies to assign all right, title and interest "in the invention and technology embodied or disclosed therein [in the '558 patent]." Arguably, it is possible that the second generation patents may, or may not, be the "invention and technology embodied or disclosed" in the

'558 patent and its underlying '340 Application. To resolve that issue, a court would have to construe the claims as well as scrutinize and compare the disclosures of the second generation patents and the '558 patent.[7] The district court did not do that in this case.

Instead, the trial court based its Rule 70 Order on a finding "that the three assignments at issue included [the second generation] patents that were part of the litigation in this matter[,]" and on a determination that those three patents "were emerging from, related to" patents and applications listed in the May 25 Order. Neither basis withstands scrutiny. As discussed above, the University's ownership over the patents in suit has not yet been adjudicated on the merits; the finding that the patents in suit "were part of the litigation in this matter" is consequently clearly erroneous. Similarly, the court's reliance on the "emerging from, related to" test is inappropriate, because that standard is inconsistent with the language in Paragraph 6, which gives the University rights "in the invention and technology embodied or disclosed [in the '558 patent]." The "emerging from, related to" test is much too broad, and is thus incongruent with the standard of Paragraph 6. To that extent, the trial court committed a legal error by using a standard inconsistent with the sole available basis for requiring VanVoorhies to assign the second generation patents without a full adjudication on the merits of the University's claims.

---

**6.** Another excerpt from the August 5, 2003, oral argument before this court:
 The Court: And so, it looks to me like Paragraph 7 is a lineal descendant provision, right?
 Mr. Tungate: Yes.

**7.** Because of our limited role as a court of appeals, *Baxter Healthcare Corp. v. Spec-*

*tramed, Inc.,* 49 F.3d 1575, 1585 (Fed.Cir. 1995) (emphasizing that "we sit as a court to review claims that a trial judge erred, and not as a court of first instance"), we decline to resolve that question on first instance. We neither express nor intimate any view on the merits of that issue.

Consequently, the trial court legally and factually erred in concluding that VanVoorhies had to assign the patents in suit pursuant to Rule 70. Because that conclusion cannot be legally sustained nor deemed harmless, we have no choice but to conclude that the district court abused its discretion in denying VanVoorhies's motion for relief from the Rule 70 Order pursuant to Rules 59 and 60. We therefore reverse the Order Denying Relief and remand for the district court to fully consider the record and apply the correct legal standard.

On remand, the trial court must restore the *status quo ante litem motam* while it considers again the merits of the University's Rule 70 motion. As a result of the improper denial of the motion for relief from the improvidently granted Rule 70 Order, the University has obtained ownership of the second generation patents and, on that basis, recorded the assignments with the PTO on July 11, 2002. However, the University has yet to establish that either the May 25 Order or its patent policy gives it ownership over those patents. Until it does so, those patents remain VanVoorhies's personal property. *See* 35 U.S.C. § 261 (2000). To avoid any possible prejudice, the district court shall first vacate its Rule 70 Order, and then take all necessary steps to restore the *status quo* as it was before the grant of the Rule 70 Order. The *status quo* should be preserved *pendente lite*.

### III

VanVoorhies also requests that we address the district court's denial of his oral motion for costs related to the prosecution of certain patent applications. We decline to do so.

Such a request is premature, since the district court denied the oral motion without prejudice to VanVoorhies filing a renewed written motion. In fact, the trial court "informed the defendant that he could file a written motion on the issue for further consideration by the Court." Because the district court has not had the opportunity to make the factual findings necessary for appellate review and to reach a final conclusion on that issue, we decline to address it on first instance. *See Gearan v. Dep't of Health & Human Servs.*, 860 F.2d 426, 428 (Fed.Cir.1988) (declining to address a fee application which was dismissed without prejudice until the agency had the opportunity to resolve factual disputes and reach a final ruling on the merits).

### IV

Because the district court abused its discretion in denying VanVoorhies's motion for relief pursuant to Rules 59 and 60, we reverse and remand for proceedings consistent with this opinion.

*REVERSED AND REMANDED.*