# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-1493

ANALYTICAL ENGINEERING, INCORPORATED,

*Plaintiff-Appellee*,

*v.*

BALDWIN FILTERS, INCORPORATED,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 02 C 2069—**Harold A. Baker**, *Judge.*

ARGUED SEPTEMBER 21, 2004—DECIDED OCTOBER 3, 2005

Before EASTERBROOK, RIPPLE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* This case reads like a manual on how not to litigate a contractual dispute in federal court authored by Baldwin Filters, Incorporated. Early in this controversy, Baldwin won a significant battle when the district court granted its motion for judgment on the pleadings. Baldwin eventually lost the war, however, when the district court issued its ruling on its motion that favored Analytical Engineering, Incorporated (AEI). Curiously, Baldwin failed to appeal the district court's ruling on the motion for judgment on the pleadings and also

failed to appeal the district court's denial of its motion to amend or alter the ruling. Instead, Baldwin appeals the district court's enforcement of its ruling, raising arguments that should have been raised in an appeal of the underlying judgment. We find no error in the district court's enforcement of its ruling and, therefore, affirm.

## I.  BACKGROUND

### A.  The Contractual Relationship Between AEI And Baldwin

In September 1998, AEI and Baldwin entered into an agreement to develop a machine that would filter soot out of diesel-engine lubricating oil. The Development and License Agreement ("Agreement") sets out the parties' desire to engineer and develop this machine, called the "Extractor"; provides for each sides' respective responsibilities regarding the engineering, design and manufacturing of the Extractor; and arranges for the licensing of any patents, patent applications, designs or other intellectual property resulting from the engineering and design of the Extractor.

In Article One of the Agreement, AEI agrees to develop and to deliver to Baldwin a prototype Extractor. AEI takes full responsibility for the engineering and development of the Extractor, and Baldwin promises to provide design requirements and specifications. In Article Two, the Agreement grants Baldwin a worldwide license exclusive to Baldwin and its sub-licensees to use the pertinent inventions and designs disclosed in the "Patents[1]" and

---

[1] The word "Patents" is specifically defined in Article Two as "any issued United States or foreign patents, including any continuations [sic], continuation-in-part, divisional, reissued, renewal or extension patent, any patent application or inventions,

(continued...)

any proprietary information regarding the Extractor. AEI retains all remaining intellectual property rights to the "Patents." In consideration of the licenses, Baldwin agrees to make certain royalty payments to AEI described in Article Three of the Agreement.

In October of 1998, the two sides signed an Addendum to the Agreement further agreeing to previously agreed upon matters with one particular exception. The last sentence of the addendum states: "If the contract is terminated per Article Seven 'Term and Termination,' all patents developed under the contract that pertain to the rotating system 'Extractor' technology and any supporting hardware necessary to allow the system to rotate and/or enhance rotation capability will then be assigned to AEI."

Baldwin ultimately terminated the contract in February of 2002.

## B. The Procedural History

Upon Baldwin's termination, AEI filed an action for declaratory judgment seeking clarification of each parties' rights as a result of Baldwin's termination of the Agreement. AEI argued that a limited amount of extrinsic evidence was needed to determine whether AEI or Baldwin retained the patents and ancillary rights to the Extractor. In response, Baldwin filed a motion for judgment on the

---

[1] (...continued)

processes, methods, or designs, whether or not patentable, that are owed by AEI or its employees, agents or affiliates relating to the 'Products.'" "Products" is defined as "the Extractor (including the Turbine, the Pre-concentrator, the Centrifuge and all other components thereof) and all improvements thereto, derivative products and replacement parts which are based upon or which utilize any technology embodied in the Extractor."

pleadings arguing that the Agreement was unambiguous and, therefore, extrinsic evidence was unnecessary to determine the rights of the parties as to the Extractor and related technology.

The district court found the Agreement to be clear and unambiguous, granted the motion for judgment on the pleadings, and held that: (1) Baldwin must assign to AEI all rights to any and all "patents developed under the contract that pertain to the rotating system 'Extractor' technology and any supporting hardware necessary to allow the system to rotate and/or enhance rotation capability"; and then (2) Baldwin would retain all other rights described in Article Two. *Analytical Eng'g, Inc. v. Baldwin Filters, Inc.*, No. 02-2069, slip op. at 7 (C.D. Ill. Sept. 19, 2002) ("Sept. 19th Order").

In interpreting the Agreement, the district court correctly focused on Article Seven of the Agreement, which describes the initial term of the contract, the circumstances under which the contract may be terminated, and the consequences to each party if the contract is terminated. The district court found that Baldwin terminated the Agreement pursuant to its unilateral right to terminate under Section 7.2(c), and that Section 7.3(c) governs the rights of the parties upon termination pursuant to Section 7.2(c).

Section 7.3(c) of the Agreement sets out each party's rights as they relate to the licensing rights granted in Article Two by first determining which party is the "Non-Defaulting Party." Neither Section 7.2(c) nor Section 7.3(c), however, defines which party is the "Non-Defaulting Party" where Baldwin terminated the Agreement pursuant to Section 7.2(c).

Faced with this obvious ambiguity, the court turned to the Addendum and found the last sentence of the Addendum to be clear and without restriction. Following the language of the last sentence of the Addendum, the district court held that, upon termination of the Agreement,

Baldwin did not reserve any rights to "the rotating system patents" and ordered Baldwin to assign to AEI all rights to the "patents developed under the contract that pertain to the rotating system 'Extractor' technology and any supporting hardware necessary to allow the system to rotate and/or enhance rotation capability," so that AEI would own the full "bundle of rights" inherent in ownership of the rotating system patents. After the assignment, the district court left to Baldwin all other rights described in Article Two. (Sept. 19th Order at 7.)

In granting Baldwin's motion for judgment on the pleadings, the district court committed two critical errors. First, the district court found that the Agreement was unambiguous, but in reality Article Seven of the Agreement was indeed ambiguous. Second, the district court failed to recognize that the patents described in Article Two of the Agreement are one and the same as the rotating system patents described in the last sentence of the Addendum. The district court understood the Article Two patents to be completely different than the rotating system patents. Both errors, however, benefitted AEI, as the court clearly held that any Article Two rights held by Baldwin as a result of its termination were subject to the last sentence of the addendum. (Sept. 19th Order at 7) ("When viewing the Agreement and addendum in their entirety, it is clear that the last sentence of the addendum alters Baldwin's retention of rights pursuant to Section 7.3(c)(i), but only to the extent specified in the last sentence."). As a result, in granting the motion for judgment on the pleadings, the district court awarded AEI ownership of the full "bundle of rights" in the rotating system patents, which included any rights described in Article Two pertaining to the rotating system patents.

Baldwin, having won its motion for judgment on the pleadings but left holding no rights in any of the patents, filed a timely motion to amend or alter judgment pursu-

ant to Fed. R. Civ. P. 59(e). In its motion to amend, Baldwin failed to admit that the Agreement was ambiguous and failed to advise the court that (1) there were only nine patents at issue in this case, and that (2) both parties would agree that the patents described in Article Two were one and the same as the rotating system patents described in the Addendum. Baldwin, instead, agreed with the analysis of the court and sought to create Article Two rights eliminated by the court's September 19th Order. Specifically, in its Rule 59 motion, Baldwin asked the district court to "clarify" and declare Baldwin's assignment to AEI of the rotating system patents subject to Baldwin's exclusive manufacturing license, and to limit Baldwin's assignment of the rotating system patents to AEI to only those patents not jointly owned by both AEI and Baldwin.

In denying the Rule 59 motion, the district court reaffirmed its original order by stating that Baldwin was not to retain any Article Two rights in the rotating system patents. *Analytical Eng'g, Inc. v. Baldwin Filters, Inc.*, No. 02-2069, slip op. at 3 (C.D. Ill. Nov. 22, 2002) ("Rule 59 Order"). The district court correctly identified Baldwin's arguments as arguments that should have been raised in its motion for judgment on the pleadings, and aptly found that, in pushing for an enlargement of its rights under Article Two to include the rotating system patents, Baldwin was attempting "to get another bite at the apple." The court noted that Baldwin gambled on how the district court would determine the rights of the parties by employing a "wait-and-see attitude" and moving for judgment on the pleadings instead of going forward with discovery. As a result of this gamble, the district court ruled that Baldwin was precluded from arguing in a Rule 59 motion arguments that should have been argued in its motion for judgment on the pleadings. Neither side appealed the district court's grant of judgment on the pleadings or the district court's denial of Baldwin's Rule 59(e) motion.

AEI then filed a motion to enforce judgment pursuant to Fed. R. Civ. P. 70. In its motion, AEI requested that the court determine whether: (1) all nine patents or patent applications derived as a result of the relationship between AEI and Baldwin are rotating system patents; (2) Baldwin retains any rights with respect to any of the rotating system patents, regardless of ownership during the term of the Agreement; (3) Baldwin must transfer all physical hardware necessary to allow the system to rotate and/or enhance rotation capability to AEI; and (4) Baldwin retains any Article Two rights with respect to proprietary information that pertains to the rotating system.

This motion represented the first time either side highlighted to the district court that there were a total of nine patents at issue and that all nine rotating system patents as described in the Addendum were one in the same as the patents described in Article Two. In light of the Rule 70 motion, the district court requested additional information from the parties to assist the court in determining whether Baldwin had complied with the district court's orders. In response, the parties stipulated to, among other things, the fact that there were a total of nine patents at issue and that all nine patents were both Article Two patents and rotating system patents as described in the Addendum. On February 2, 2004, the district court issued an order granting in part AEI's motion to enforce judgment. In granting the Rule 70 motion, the district court correctly limited its inquiry to whether the parties had complied with the court's original order and explicitly informed both sides that it would not go behind its original judgment. *See Analytical Eng'g, Inc. v. Baldwin Filters, Inc.*, No. 02-2069, slip op. at 2 (C.D. Ill. Feb. 2, 2004) ("Rule 70 Order"). The court accepted the parties' stipulation and found that, since its original order of September 19th, Baldwin's actions had been inconsistent with AEI's ownership of the full "bundle of rights" to the

rotating system patents. *Id*. at 2-3. Based on this finding, the court stated, now for the third time, that Baldwin was to retain no rights, including Article Two rights, to the rotating system patents, and ordered Baldwin to execute patent assignments on all nine patents in order to give AEI the full "bundle of rights." *Id*. at 3.

This appeal followed on February 27, 2004.

## II.  ANALYSIS

### A.  The District Court Possesses Limited Authority Under Rule 70

On appeal, Baldwin argues that the district court exceeded its "limited jurisdiction" in granting AEI relief pursuant to Rule 70. We find Baldwin's conflation of the district court's authority under Rule 70 with the limits of the district court's jurisdiction both inaccurate and distracting. Rule 70 does not establish jurisdiction or venue; Rule 70 neither broadens nor contracts the district court's jurisdiction conferred under federal statute. *Ga. Cent. Credit Union v. Martin G.M.C. Trucks, Inc.*, 622 F.2d 137, 139 (5th Cir. 1980) (Rule 70 does not explicitly or implicitly establish a basis for jurisdiction); *see also* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3021 (1997). Rule 70 gives the district court a discrete and limited power to deal with parties who thwart final judgments by refusing to comply with orders to perform specific acts.

### B.  Baldwin Did Not Comply With The District Court's Orders

The central issue in this case is whether the district court properly granted Rule 70 relief to AEI. We review the district court's grant of relief under Rule 70 for an abuse of

discretion. *Stotler and Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989) (describing a district court's decision on a contempt petition under Federal Rules of Civil Procedure 70 and 71 as discretionary in character and reviewing for abuse of discretion); *see also Univ. of W. Va., Bd. of Trs. v. VanVoorhies*, 342 F.3d 1290, 1298 (Fed. Cir. 2003) (finding the district court abused its discretion in granting relief pursuant to Rule 70); *Gates v. Collier*, 616 F.2d 1268, 1271 (5th Cir. 1980) (Rule 70 orders reviewed for abuse of discretion).

In its September 19, 2002 order, the district court entered final judgment in favor of Baldwin and against AEI and ordered the following:

> Baldwin must assign to AEI all rights to any and all "patents developed under the contract that pertain to rotating system 'Extractor' technology and any supporting hardware necessary to allow the system to rotate or enhance rotation capability." Baldwin then retains all other rights described in Article Two.

(Sept. 19th Order at 7.)

Because the district court entered final judgment in this case and the judgment ordered Baldwin to perform a specific act, if Baldwin was not in full compliance with the district court's order, then the district court properly granted AEI's Rule 70 motion where the motion only sought to force compliance with the original order. Baldwin argues that it was improper for the district court to grant Rule 70 relief because it complied with the district court's orders. Baldwin contends that it complied with the district court's order of September 19th when it executed patent assignments for all the patents it owned and thereby placed AEI in the position of "patentee," or legal title holder of those patents.

A closer look at what Baldwin assigned to AEI reveals what it did not assign to AEI and how its actions, therefore, fell short of full compliance with the district court's Septem-

ber 19th order. The district court ordered Baldwin to assign
to AEI "all rights to any and all patents." Baldwin made
AEI the legal title holder of the nine patents at issue, but
did not assign to AEI any of the licenses Baldwin held to
any of the nine patents. In assigning only legal title to AEI,
Baldwin must have overlooked both the district court's
order to assign "all rights" to the patents in question and
the district court's explanation in footnote 4 of its Septem-
ber order that "upon assignment of the patents to AEI,
[AEI] will own the full 'bundle of rights' inherent in owner-
ship of the rotating system patents." (Sept. 19th Order at 6
n.4.)

Baldwin argues that the only logical interpretation of
the district court's order is that Baldwin retained its Article
Two licenses for the five patents described in Article Two,
but had no Article Two license rights to the other four
patents at issue. Without commenting on whether
Baldwin's interpretation is indeed logical, Baldwin's
compliance with its own interpretation is not at issue in
this case. Instead, Baldwin's strict compliance with the
letter of the district court's order is the only issue of
consequence in this appeal. The district court's order
directed Baldwin to first assign "all rights" to AEI and then
retain whatever Article Two rights remained. It is clear,
however, that Baldwin, by its actions and own admissions,
failed to assign to AEI "all rights."

As a result, the district court, having found Baldwin in
noncompliance with its September 19th order, did not abuse
its discretion pursuant to Rule 70 when the district court
directed Baldwin to:

> [R]elease any filings or claims that have been filed with
> regard to the rotating system patents [and] execute
> patent assignments on all nine patents as originally
> tendered by AEI without "tuning" them [so as to] assign
> the 'full bundle of rights' to AEI.

(Rule 70 Order at 3.)

### C. The District Court Did Not Exceed Its Authority Under Rule 70

Baldwin argues that the district court exceeded its authority under Rule 70 by granting AEI additional relief not granted in its original order of September 19th, contending that in granting AEI's Rule 70 motion the district court extinguished rights Baldwin previously held under the original order. Two sentences in the district court's September 19th order supply Baldwin with support for this argument: a single sentence in footnote 4 and the final sentence of the order. In footnote 4 the district court stated: "In Article Two, Baldwin was granted certain licensing rights to 'Patents' . . . . Baldwin retained those rights upon termination of the contract pursuant to Section 7.3(c)(I)." (Sept. 19th Order at 6 n.4). In the final sentence of the same order, the district court stated "Baldwin then retains all other rights described in Article Two." *Id*. at 7.

Based on these two sentences, Baldwin contends that the district court ruled that Baldwin was to retain its Article Two licenses for the five patents described in Article Two. As a result, so goes Baldwin's argument, when the district court directed Baldwin in its Rule 70 order that "Baldwin retains no rights, including Article Two Rights," the district court extinguished Baldwin's Article Two rights, which it had previously granted. Baldwin maintains that if the district court's September 19th order meant that Baldwin was not to retain any Article Two license rights, then the order would have specifically said so.

The express language of Rule 70 establishes the extent of the district court's limited post-judgment authority: "If a judgment directs a party . . . to perform any other specific act . . . and the party fails to comply within the time specified, the court may direct the act to be done. . . ." FED. R. CIV. P. 70. We recognize that a district court's purview under Rule 70 is limited to effectuating its final-judgment

orders, and that in granting relief under Rule 70, a district court cannot grant new rights or extinguish previous rights held by either party. Under Rule 70, therefore, a district court may direct a party to complete a specific act where the district court previously directed the same party to perform the same act in its final judgment and that party has failed to comply.

Reviewing both the district court's final judgment and its Rule 70 order, we find that the district court did not exceed its authority in granting AEI Rule 70 relief. Neither footnote 4 nor the last sentence of the district court's September 19th order carries the day for Baldwin. Footnote 4 in its entirety states:

> The assignment in the last sentence of the addendum is without restriction and, upon assignment of the patents to AEI, the plaintiff will own the full "bundle of rights" inherent in the ownership of rotating systems patents. *See generally Intellectual Property Development, Inc. v. TCI Cablevision*, 248 F.3d 1333, 1342 (Fed. Cir. 2001) (referring to a patent as a 'bundle of rights' which may be divided and assigned, or retained in whole or in part) (quoting *Vaupel Textilmaschinen KG v. Meccania Euro Italia S.P.A.*, 944 F.2d 870, 874 (Fed. Cir. 1991)). In order to discern whether the parties intended the assignment to contain all the rights in the "bundle," the courts looks to the assignment and surrounding circumstances. *Vaupel*, 944 F.2d at 874. In this case, the answer is found by looking to the Agreement and addendum. In Article Two, Baldwin was granted certain licensing rights to "Patents," defined as those "that are owned by AEI" (in other words, owned by AEI during the term of the Agreement) (emphasis added). Baldwin retained those rights upon termination of the contract, pursuant to Section 7.3(c)(I). But the rotating systems patents do not constitute a "Patent" as defined

in Article Two because Baldwin, and not AEI, apparently owned the rotating system patents during the term of the Agreement. And Baldwin did not reserve any rights to those patents in the addendum. Therefore, Baldwin does not retain any rights to the rotating system patents and must assign all rights in those patents to AEI.

More than anything, footnote 4 illustrates the district court's confusion in this case by highlighting its erroneous assumption that there were two separate, non-overlapping groups of patents: "rotating system patents" and "Article Two Patents." It is clear, however, that footnote 4 neither supports any reservation, nor grants any rights to Baldwin to the rotating system patents. The purpose of footnote 4 is to explain and effectuate the last sentence of the Addendum. Indeed, the sentence footnote 4 modifies states, "The last sentence of the addendum clearly addresses only the rotating system patents and does not alter any other patents or rights pertaining to other patents." So in interpreting footnote 4, this Court must conclude that the district court meant what it said when it stated in footnote 4 that "[t]he assignment in the last sentence of the addendum is without restriction and, upon assignment of the patents to AEI, the plaintiff will own the full 'bundle of rights' inherent in the ownership of rotating systems patents," so that "Baldwin does not retain any rights to the rotating system patents and must assign all rights in those patents to AEI," with full knowledge and without qualification. Although the district court recognized in footnote 4 that the Agreement granted Baldwin certain licensing rights in Article Two, and Baldwin retained those rights upon termination of the contract pursuant to Section 7.3(c)(I), the district court explicitly modified those retained rights in the text of its September 19th order where it stated: "When viewing the Agreement and addendum in their entirety, it is clear that

the last sentence of the addendum alters Baldwin's retention of rights pursuant to Section 7.3(c)(I), but only to the extent specified in the last sentence." (Sept. 19th Order at 7.)

Contrary to Baldwin's argument, the district court explicitly modified Baldwin's Article Two rights in its September 19th order and made those "retained" rights inferior to and subject to Baldwin's assignment of all rights in the rotating system patents to AEI. The district court effectuated this modification by directing Baldwin to first "assign to AEI all rights to any and all [rotating system patents]" and "then [retain] all other rights described in Article Two [not pertaining to the rotating system patents]." Thus, the last sentence of the district court's September 19th order is properly viewed as nothing more than a catch-all statement allowing Baldwin to retain any other rights described in Article Two not affected by its assignment of all rights in the rotating system patents as directed by the last sentence of the Addendum, but in no way granting Baldwin any rights as to the rotating system patents. We find that the district court knowingly left Baldwin with no Article Two rights as to the rotating system patents. The district court, therefore, did not exceed its authority under Rule 70 in granting relief to AEI. After final judgment, Baldwin was to retain no rights whatsoever in the rotating system patents, and after the Rule 70 Motion, Baldwin still retains no rights whatsoever in the rotating system patents.

## D. The District Court Did Not Consider Improper Evidence In Ruling On AEI's Rule 70 Motion

In response to AEI's Rule 70 motion, the district court solicited additional information from the parties concerning the nature of the patents at issue in order to assist the district court in addressing AEI's motion to enforce. In

response to this request for information, AEI and Baldwin stipulated and agreed that, *inter alia*, there were a total of nine patents at issue in the case and that all nine patents were both "Article Two Patents" and "Rotating System Patents." After receiving the parties' stipulation and hearing oral argument from the attorneys, the district court granted AEI's motion to enforce in part and stated, "The parties have since agreed that each of the patents developed pursuant to their Agreement was a rotating system patent as described in the addendum. This effectively extinguishes all Article Two rights that Baldwin hoped to retain with respect to all patents."

On appeal, Baldwin now argues that the district court erred in considering "extrinsic evidence," specifically a stipulation between the two parties, in ruling on the Rule 70 motion. This argument begs a question, however: If Baldwin did not want the district court to consider all nine patents as both "Article Two Patents" and "Rotating System Patents," then why did Baldwin stipulate to that fact?

Stipulations by parties are nothing more than a contract. *See Tidemann v. Nadler Golf Car Sales, Inc.*, 224 F.3d 719, 723 (7th Cir. 2000). Since both parties contracted that all nine patents at issue were rotating system patents, Baldwin is bound by that contract and all the legal ramifications of that contract. Furthermore, although the parties submitted this new contract to the district court for the court to consider in granting relief under Rule 70, it was not an abuse of discretion for the district court to consider the separate contract in determining whether Baldwin complied with its original order.

Furthermore, even if we were to find some error in the district court's consideration of the parties' stipulation, that error would be harmless as the district court's consideration of the parties' stipulation in no way affected the relief granted by the district court. In ruling on AEI's Rule 70 motion, the district court granted the following relief: (1)

that "Baldwin retains no rights, including Article Two rights, to the rotating system patents"; (2) that "Baldwin shall release any filings or claims that have been filed with regard to the rotating system patents"; and (3) that "Baldwin shall execute patent assignments on all nine patents as originally tendered by AEI without 'tuning' them, and in doing so, shall assign the full 'bundle of rights' to AEI." Each element of relief flows directly from the district court's September 19th order as discussed in section II.B above and is unaffected by whether the district court considered all nine patents as both "Article Two Patents" and "Rotating System Patents." The only ramification of the stipulation is, as the district court explained in dicta of its Rule 70 order, "[The stipulation] effectively extinguishes all Article Two rights that Baldwin hopes to retain with respect to all patents."

### E.  The District Court's Rule 70 Order Is Not Barred By Res Judicata

Baldwin next argues that the relief granted by the district court in its Rule 70 order is precluded on res judicata grounds. Specifically, Baldwin contends that where the district court had already concluded in its final judgment that Baldwin was to retain its Article Two rights, the district court disturbed that finding by granting Rule 70 relief. In addition, Baldwin asserts that the district court's ruling that all nine patents at issue were both "Article Two Patents" and "rotating system patents" is also barred as the district court's September 19th order was based upon two separate non-overlapping groups of patents: "rotating system patents" and "Article Two Patents." Both arguments are without merit.

Generally speaking, res judicata does not apply to a court's redetermination of rulings made earlier in the same lawsuit. Res judicata requires: (1) a judgment on the

merits *in an earlier suit*; (2) the same parties in the present suit and the earlier suit; and (3) the same causes of action in both suits. *Cent. States, Se. & Sw. Areas Pension Fund v. Hunt*, 296 F.3d 624, 628 (7th Cir. 2002) (emphasis added). Instead, a better argument for Baldwin would be the law of the case doctrine which limits a court's redetermination of rulings made earlier in the same lawsuit. *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1317 (7th Cir. 1995) (citing cases). The law of the case doctrine is a rule of practice which recited that when an issue is once litigated and decided, that should be the end of the matter. *Creek v. Vill. of Westhaven*, 144 F.3d 441, 445 (7th Cir. 1998) (quotations and citations omitted). The rule provides consistency and protects parties from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action, *id.*, but does not put a limit on the district court's power to reopen what has been already decided. *See Menzer v. United States*, 200 F.3d 1000, 1004 (7th Cir. 2000).

In this case, we find that nothing in the district court's order granting AEI's Motion to Enforce the Judgment in any way altered or changed the original judgment entered by the district court. As we explained in section II.C above, after final judgment, Baldwin was to retain no rights whatsoever in the rotating system patents. After the Rule 70 motion, Baldwin still retains no rights whatsoever in the rotating system patents. Furthermore, we find that the district court did not make a finding that all nine patents at issue were both "Article Two Patents" and "rotating system patents." Instead, as we explained in section II.D above, the district court merely accepted the parties' stipulation to that fact and explained to both parties the legal ramifications of their stipulation.

**F. Under No Circumstances Will Baldwin Be Allowed To Appeal The Underlying Judgment In This Case**

In its last cry for help, Baldwin pleads that somewhere within its menagerie of arguments lies sufficient grounds for this Court to now allow Baldwin to appeal the underlying final judgment in this case. In a civil case, an appeal from a district court may be taken within 30 days after the judgment or order appealed from is entered. FED. R. APP. P. 4(a)(1)(A). The test for when the period, under which an appeal must be taken or a petition for certiorari filed, begins to run anew is "whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality." *Fed. Trade Comm'n v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206, 211-12 (1952). We find that the district court did not, by its Rule 70 order, disturb, revise or alter the legal rights or obligations plainly and properly settled in its final judgment. As a result, the time to take an appeal of the underlying judgment in this case does not run anew. *See id.* (holding that the judgment at issue did not meet the test for whether the time to file a petition for certiorari ran anew as the judgment at issue simply reiterated, without change, everything which had been decided previously). We find, therefore, that Baldwin will not be allowed to argue the merits of the underlying judgment at any time or under any circumstance. The time has long since passed to appeal any errors made by the district court in the final judgment.

### III. CONCLUSION

For all the foregoing reasons, the ruling of the district court is AFFIRMED.

No. 04-1493 19

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*