**TRUSTEES OF THE ST. PAUL ELECTRICAL CONSTRUCTION INDUSTRY FRINGE BENEFIT FUNDS, Plaintiffs,**

v.

**MARTENS ELECTRIC COMPANY, Defendant.**

**No. 06 CV 2334 PJS/JJG.**

United States District Court, D. Minnesota.

May 3, 2007.

Ruth S. Marcott, Felhaber, Larson, Fenlon & Vogt, P.A., for Plaintiffs.

ORDER ON MOTIONS FOR RECONSIDERATION AND FOR DEFAULT JUDGMENT

SCHILTZ, District Judge.

This matter is before the Court on the motion of plaintiffs Trustees of the St. Paul Electrical Construction Industry Fringe Benefit Funds ("the Fund") for reconsideration of the Court's November 28, 2006 Order [Docket No. 20] granting in part and denying in part the Fund's motion for default judgment [Docket No. 7].

The Fund filed its motion for reconsideration [Docket No. 28] after having sought and received the Court's permission to do so under Local Rule 7.1(g). The Court heard the Fund's argument on the motion for reconsideration on April 16, 2007. Defendant Martens Electric Company ("Martens Electric") did not appear.

As explained in detail in the Court's November 28 Order, the Fund filed this action on June 8, 2006 to recover delinquent fringe-benefits payments owed by Martens Electric to the Fund under a multi-employer collective-bargaining agreement ("CBA"), together with liquidated damages on the delinquent payments and attorney's fees and costs.[1] The Fund's complaint asserted that Martens Electric's contribution for April 2006 (due May 15, 2006) was delinquent. In later-filed affidavits [Docket Nos. 11 and 18], the Fund asserted that Martens Electric's contributions for May 2006 (due June 15, 2006) through September 2006 (due October 15, 2006) were also delinquent. The Fund seeks to recover, through a default judgment against Martens Electric, liquidated damages and related costs for all of Martens Electric's late payments—that is, the one payment missed before the complaint was filed (for April 2006) and several payments missed after the complaint was filed (for May 2006 through September 2006).

As the Court explained in its November 28 Order, the Court has strong reservations about entering, against a defendant who has not appeared, a default judgment for conduct allegedly committed by the defendant *after* the complaint was filed and *after* the defendant made a decision not to contest liability. Entering a default judgment under these circumstances seems inconsistent with both the Federal Rules of Civil Procedure ("Civil Rules") and the Due Process Clause of the Fifth Amendment. To elaborate:

Default judgments are a necessity, but they "are not favored by the law . . . ." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2681 (3d ed.1998). A judge is naturally reluctant to enter judgment against a party who has never appeared before the judge and told the judge his or her side of the story. Reflecting this reluctance—and, more importantly, reflecting notions of due process and fundamental fairness—the Civil Rules take pains to protect against the unfair imposition of a default judgment.

To begin, the plaintiff must make her claim against the defendant in a complaint. Fed.R.Civ.P. 3. In that complaint, the plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R.Civ.P. 8(a)(2). In other words, the plaintiff must describe what the defendant has done, and why the defendant's past conduct has given the plaintiff the right to relief. The plaintiff must also provide "a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a)(3). The plaintiff must, in short, tell the defendant what she will ask the Court to order the defendant to do.

The plaintiff must serve her complaint in the manner described in Rule 4. *See* Fed. R.Civ.P. 4(c)(1). Generally speaking, Rule 4 requires a more reliable—and, for the

---

1. The Fund is also entitled to interest on the delinquent payments under the CBA and a provision of the Employee Retirement Income Security Act of 1974 ("ERISA") found at 29 U.S.C. § 1132(g)(2)(B). But neither the Fund's memorandum in support of its motion for default judgment [Docket No. 9] nor its memorandum in support of its motion for reconsideration [Docket No. 31] includes a request for an award of interest. Accordingly, the Court will not award interest.

server, a more expensive and less convenient—form of service than Rule 5, which applies to the service of all papers after the summons and complaint. For example, under Rule 5(b)(2)(B), the U.S. Mail can be used to serve a discovery request or a motion for summary judgment, but, under Rule 4, the U.S. Mail generally cannot be used to serve a complaint.[2]

Service of the complaint is not sufficient. The plaintiff must also serve a summons in the manner described in Rule 4. *See* Fed. R.Civ.P. 4(c)(1). That summons must warn the defendant that, unless he makes a timely appearance to defend against the complaint, a default judgment will be entered against him "for the relief demanded in the complaint." Fed.R.Civ.P. 4(a).

The defendant then has a choice. He can choose to incur the expense of hiring an attorney and defending against the complaint. Or he can decide that, given the (high) likelihood that he will be found liable, or the (low) amount of damages the plaintiff is seeking, he will not make an appearance, but will instead permit a default judgment to be entered against him.

A defendant who decides not to make an appearance is still protected by the Civil Rules. The plaintiff cannot get a default judgment against the defendant unless she first persuades the clerk to enter a default; to do that, the plaintiff must swear to the clerk that the defendant has been properly served with the summons and complaint under Rule 4 and yet failed to appear. Fed.R.Civ.P. 55(a). After the default is entered, the plaintiff cannot get a judgment against the defendant—unless her complaint seeks "a sum certain" or "a sum which can by computation be made certain," Fed.R.Civ.P. 55(b)(1)—without persuading a judge to enter that judgment, Fed.R.Civ.P. 55(b)(2). The judge, too, will

verify that the defendant was properly served.

If the defendant does not make an appearance, the plaintiff is not required to serve any papers on him after serving the summons and complaint—with one important exception, which will be discussed below. Fed.R.Civ.P. 5(a). The defendant is not even entitled to notice that the plaintiff is moving for entry of a default judgment against him. Fed.R.Civ.P. 55(b)(2); *see also Arango v. Guzman Travel Advisors,* 761 F.2d 1527, 1531 (11th Cir.1985) ("The Federal Rules do not even require that parties who default for failure to appear receive notice of the default judgment.") The defendant will simply wake up one day and discover that judgment has been entered against him.

That is not unfair. Under Rule 54(c), "[a] judgment by default shall not be different in kind or exceed in amount that prayed for in the demand for judgment." In other words, when a defendant is served with the complaint, he knows exactly what will happen if he does not appear. He can readily calculate his legal exposure. He knows that a default judgment will be entered against him, but he also knows that the judgment will not exceed the relief specified in the complaint. This is critically important. As the leading treatise explains:

> The first sentence of Rule 54(c) states that a judgment by default is limited to the relief demanded in the complaint. The theory of this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint

---

**2.** A defendant can, of course, waive personal service and agree to accept service by mail.

*See* Fed.R.Civ.P. 4(d).

lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award. . . .

The restriction on the award of relief in the first sentence of the rule most clearly is justified in the case of a completely nonappearing defendant. That defendant receives only the original complaint and therefore is aware only of the prayer for relief set forth in that document. The decision not to enter the action is based solely on the information in that pleading and defendant should be allowed to rely on it.

10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2663 (3d ed.1998) (footnotes omitted).

If a plaintiff wishes to seek relief that is not described in her original complaint, then she must amend her complaint and serve that amended complaint on the defendant. This, then, gives the defendant a chance to "reevaluate and reverse the earlier decision not to defend actively." *Id.* If the plaintiff wishes to add additional claims based on conduct that occurred before she filed suit, she can do so under Rule 15(a). That rule gives her the right to amend her complaint "once as a matter of course"—that is, once without the court's permission—because, by definition, the non-appearing defendant has not served "a responsive pleading." Fed. R.Civ.P. 15(a). She can then make further amendments with the permission of the court—permission that is "freely given when justice so requires." *Id.* If the plaintiff wishes to add additional claims based on "transactions or occurrences or events which have happened since the date of the [original complaint]," she must move for permission to file a supplemental complaint under Rule 15(d). That permission will not be granted unless the plaintiff has given the defendant "reasonable notice" of her motion. *Id.*

As noted above, Rule 5(a) generally excuses the plaintiff from having to serve anything but the summons and complaint on a non-appearing defendant. The rule makes an important exception, however. Under the rule, "pleadings asserting new or additional claims for relief" against the defendant—such as an amended complaint under Rule 15(a) or a supplemental complaint under Rule 15(d)—"shall be served upon [the defendant] in the manner provided for service of summons in Rule 4." Fed.R.Civ.P. 5(a).

Note, then, the large number of rules that work together to ensure that a defendant receives fair notice of the claims against him, the relief that the plaintiff seeks, and the consequences of his failure to defend the action: Rule 3 requires the plaintiff to file a complaint. Rule 4(c)(1) requires the plaintiff to serve that complaint on the defendant by a particularly reliable means. Rule 4(c)(1) also requires the plaintiff to serve a summons with the complaint—a summons that, by virtue of Rule 4(a), must warn the defendant that, if he does not defend, a default judgment will be entered against him *"for the relief demanded in the complaint."* Rule 8(a) requires that, in the complaint, the plaintiff describe her claim and the relief that she seeks. Rule 15(a) requires the plaintiff to amend her complaint if she decides to assert new claims, and, if those claims are based on conduct occurring after the original complaint was filed, Rule 15(d) requires the plaintiff to supplement her complaint after giving notice to the defendant. Rule 5(a)—which otherwise excuses a plaintiff from serving any papers on a non-appearing defendant—requires Rule 4 service on non-appearing defendants of

"pleadings asserting new or additional claims for relief." Rule 55 requires the plaintiff to seek a default from the clerk and, in most circumstances, a judgment from the judge. And finally, Rule 54(c) prohibits the judge from entering a judgment that is "different in kind from or [that] exceed[s] in amount that prayed for in the demand for judgment" in the complaint.

Consider, now, the following hypothetical, which illustrates what has happened in this case, and what apparently happens routinely in federal court: Under a CBA, an employer is required to make contributions to a pension fund by the fifteenth of every month. Those contributions must be based on the number of hours worked by union employees during the previous month. The employer fails to make the contributions due on May 15, 2006 for the hours worked by its union employees in April 2006. The pension fund sues the employer on June 1, 2006.

In the complaint, the pension fund seeks to recover the contributions that were due on May 15 (along with liquidated damages and related costs). So far, so good. But the pension fund also asserts an additional claim in its complaint—a claim in which the pension fund pleads the following: "We predict that this employer is going to fail to make contributions in the future." In the prayer for relief, the pension fund asks not only that it be awarded damages related to the one and only pension contribution that had been missed at the time the complaint was filed, but that it also be awarded damages related to pension contributions that the employer misses in the future.

If the employer does not appear, it will be completely at the mercy of the pension fund. The pension fund may seek a default judgment in a month—or in ten months—or in a year—or in ten years. When the pension fund *does* seek a default judgment, the employer will have no notice whatsoever that the pension fund is doing so. *See* Fed.R.Civ.P. 5(a). The employer will not be told how many payments it allegedly missed, when it allegedly missed those payments, or the amounts that were allegedly due. The employer will simply wake up one day and find that a judgment has been entered against it.

This *is* unfair, and it is inconsistent with the spirit—if not the letter—of the Civil Rules. It also raises serious concerns under the Due Process Clause. According to the pension fund in the hypothetical case described above—and according to the Fund in the real case now before this Court—all of the protections described above can be circumvented as a practical matter by the simple expedient of adding two vague sentences to the complaint. First, the plaintiff must add a line in which she pleads, in essence: "I also predict that, in the future, the defendant will breach other obligations to me." Second, the plaintiff must add a line to her prayer for relief in which she pleads, in essence: "I also want whatever other relief I decide to seek, if and when I decide to seek it."

As a practical matter, under the Fund's view of the world, adding these two sentences to a complaint largely dismantles the elaborate and interlocking set of protections found in the Civil Rules and described above. For example, Rule 15(d)—which requires the plaintiff to supplement her complaint (with the court's permission, and after giving notice to the defendant) if she wishes to seek relief based on "transactions or occurrences or events which have happened since the date of the [original complaint]"—can be avoided simply by inserting a sentence in the complaint that claims the right to recover for unspecified legal wrongs that the defendant might commit in the future. And Rule 54(c)—which prohibits the judge from entering a

judgment by default that is "different in kind from or [that] exceed[s] in amount that prayed for in the demand for judgment"—can be avoided simply by inserting a sentence in the demand for judgment praying for whatever unspecified relief the plaintiff later decides to seek.

Another problem is that the forward-looking "claim" whose addition to the complaint so weakens the protections of the Civil Rules is not really a claim at all. The claim does not meet the pleading standards of Rule 8(a)(2), as a plaintiff can hardly provide "a short and plain statement of the claim showing that the pleader is entitled to relief" when the allegedly wrongful conduct has not even occurred yet—and may never occur. The claim is also not one that a federal court has the power to hear, as an assertion that an employer may miss unspecified pension contributions at unspecified times in the future hardly presents a "Case" or "Controversy" for purposes of Article III, Section 2 of the United States Constitution. (How would a defendant prove that it will *not* miss an unspecified contribution due on the fifteenth of an unspecified month in an unspecified year?)

To appreciate the invalidity of such a claim, imagine if it were brought by the Fund against an employer who had *not* missed one pension payment, as Martens Electric did. The complaint would have to plead something like the following: "Well, even though the Employer hasn't actually breached any obligation to us, we think it may do so in the future, so we're suing it now." Such a complaint would be dismissed in a heartbeat, and the Fund's attorneys would be sanctioned. How does the fact of a single missed pension payment make such a claim any more valid, any more consistent with the Civil Rules, or any more of a "Case" or "Controversy" for purposes of Article III?

And, finally, returning to the particular concerns implicated in the default-judgment context: The practice engaged in here by the Fund gives a defendant in the position of Martens Electric no basis for calculating its maximum legal exposure or for deciding "whether to expend the time, effort, and money necessary to defend the action." 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2663 (3d ed.1998). The defendant has no idea when the plaintiff will move for a default judgment or how many payments the plaintiff will allege the defendant has missed. The protections that defendant enjoys through the combination of Rules 3, 4, 5, 8(a), 15(a), 15(d), 54(c), and 55 largely disappear if the plaintiff merely warns the defendant in the complaint that, at some unspecified time in the future, the plaintiff will seek an unspecified amount of damages for an unspecified number of missed pension contributions that the defendant will miss at unspecified times in the future.

In response to these concerns, the Fund has cited cases from this[3] and other[4] districts in which courts have granted relief similar to the relief the Fund seeks in this

**3.** *See, e.g., Trs. St. Paul Elec. Constr. Indus. Fringe Benefits Funds v. Preferred Elec., Inc.,* No. 06–CV–2333 (ADM/AJB), Findings of Fact, Conclusions of Law and Order [Docket No. 26] (D.Minn. Feb. 15, 2007); *Trs. St. Paul Elec. Constr. Indus. Fringe Benefits Funds v. Assured Commc'ns, Inc.,* No. 06–CV–2403 (DSD/SRN), Findings of Fact, Conclusions of Law and Order [Docket No. 15] (D.Minn. Oct. 20, 2006).

**4.** *See, e.g., La Barbera v. Les Sub–Surface Plumbing, Inc.,* No. 2:03–CV–6076, 2006 WL 3628024 (E.D.N.Y. Dec. 11, 2006); *King v. STL Consulting, LLC,* No. 05–CV–2719, 2006 WL 3335115 (E.D.N.Y. Oct. 3, 2006); *Ames v. STAT Fire Suppression, Inc.,* 227 F.R.D. 361 (E.D.N.Y.2005).

case. But these cases have little persuasive value, for the simple reason that they do not mention or analyze only superficially the concerns described above. This is understandable. These cases involve default judgments. By definition, the defendants in these cases did not appear—or at least did not defend vigorously. Without defendants pressing the concerns described above, judges cannot be expected to address those concerns.

In sum, this Court continues to have grave concerns about whether, in a case in which the defendant has not appeared, a default judgment may be granted for relief that was not specifically described in the complaint and that arose out of conduct that did not occur until *after* the complaint was filed and *after* the defendant decided not to defend. But, in this particular case, the Court will nevertheless grant the Fund the relief that it seeks. The Court will do so for two reasons:

■ First, the protections provided by the Civil Rules, like most other legal protections, can be waived. *See, e.g.,* Fed. R.Civ.P. 12(h). The Court obviously believes that Martens Electric has a powerful defense to some of the Fund's claims, but Martens Electric has not appeared to assert that defense, despite having been notified of the Court's concerns and invited to address them. This Court adjudicates; it does not litigate. If Martens Electric does not care enough about its rights to assert them, then its rights are waived.

■ Second, under the *circumstances of* this case, the Court finds that entering the default judgment sought by the Fund will not deprive Martens Electric of due process. The Fund was not required to serve any papers on Martens Electric, but its attorney, Ruth Marcott, has conscientiously served just about everything on Martens Electric, including the original complaint, the Fund's motion for default judgment and supporting papers, the

Court's November 28 Order, the Fund's request to bring a motion for reconsideration of the November 28 Order, the Court's letter granting that request, and the Fund's motion for reconsideration and supporting papers. *See* Aff. of Service [Docket No. 32]. Martens Electric has had ample notice of precisely what relief the Fund seeks. It has nevertheless chosen not to appear at any time before, during, or after the April 16 hearing on the Fund's motion for reconsideration. Accordingly, the Court finds that granting the Fund the relief that it seeks would not be fundamentally unfair. *Cf. Appleton Elec. Co. v. Graves Truck Line, Inc.,* 635 F.2d 603, 610–11 (7th Cir.1980). The Court leaves open the possibility that in a different case, for the reasons stated above and in the Court's November 28 Order, a defaulting defendant might succeed in challenging the type of relief requested in this case.

The Fund has provided sufficient evidence that it is entitled to the monetary relief it seeks and to an order that Martens Electric post a security deposit with the Fund because Martens Electric is a "habitually delinquent" employer under the CBA. *See* Compl. Exs. B & C; Callies Aff. [Docket No. 11]. The Court's award of costs and fees in this Order is based on the affidavit of Marcott and supporting documentation provided to the Court on December 26, 2006 [Docket No. 22]. The Court is awarding all sufficiently documented fees and costs related to securing the relief awarded in this Order, not just the fees and costs related to securing the relief awarded in the now-vacated November 28 Order. The billing records attached to Marcott's affidavit reflect a total of $7,527.50 in attorney's fees related to this matter. (Marcott's affidavit itself, likely because of a simple error in arithmetic, puts this amount at $8,527.50.) Marcott's affidavit reflects a total of $781.00 in

related costs, for a total in fees and costs of $8,308.50.

## ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Fund's motion for reconsideration [Docket No. 28] is GRANTED, the Court's November 28, 2006 Order [Docket No. 20] is VACATED, and the Fund's motion for default judgment [Docket No. 7] is GRANTED as follows:

1. The Fund is entitled to total damages in the amount of $19,966.20, calculated as the sum of the following:

   a. Liquidated damages for Martens Electric's delinquent contributions from April 2006 through July 2006 in the amount of $7,971.81.

   b. Liquidated damages for Martens Electric's delinquent contributions in August 2006 and September 2006 in the amount of $3,685.89. And

   c. Attorney's fees and costs in the amount of $8,308.50.

2. Martens Electric is hereby ORDERED to post a security deposit of $21,602 with the Fund in accordance with Article IV, Section 13(e) of the CBA and Section 4 of the Fund's Delinquency Collection Procedures.

LET JUDGMENT BE ENTERED ACCORDINGLY.